Strafford
No. 82-467

# THE STATE OF NEW HAMPSHIRE

v.

# TIMOTHY E. BERUBE

August 31, 1983

*Gregory H. Smith*, attorney general (*Peter W. Mosseau*, assistant attorney general, on the brief and orally), for the State.

*Joanne S. Green*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

DOUGLAS, J.   The defendant, Timothy E. Berube, was convicted of possession of a firearm by a convicted felon, RSA 159:3 (Supp. 1981), after a jury trial in Superior Court (*Goode*, J.). Among the grounds for his appeal is his assertion that the State did not satisfy its burden of proving beyond a reasonable doubt that he had been informed of his *Miranda* rights before undergoing custodial interrogation, and therefore that incriminating statements made by him

were improperly admitted into evidence at his trial. We reverse and remand the case for a new trial.

On September 21, 1981, the defendant was involved in a two-car collision while he was driving his vehicle in Rochester. At the scene of the accident, Sergeant John Cook of the Rochester Police Department seized a handgun which he observed on the floor of the defendant's car through the front windshield. The defendant was arrested at the accident scene for disorderly conduct because he was interfering with medical technicians who were administering treatment to persons injured in the collision.

Medical personnel who examined the defendant at the accident site noted the possibility of a concussion from the impact of his head on the windshield of his car. He was taken to a nearby hospital for treatment of injuries he had received in the accident.

At the hospital, the defendant was also arrested for driving while intoxicated. He was read the pre-interrogation warnings required by the Federal and State Constitutions, see *Miranda v. Arizona*, 384 U.S. 436, 479 (1966); *State v. Nash*, 119 N.H. 728, 730–31, 407 A.2d 365, 367 (1979), and the State's implied consent law, RSA 265:84 and :92. *See* Laws 1983, 373:12 and :20. The defendant initially agreed to submit to a blood test, but revoked his consent when the technician arrived to take a blood sample. He was then taken from the hospital to the Rochester Police Station, where he was questioned about his activities that day.

At a suppression hearing on September 30, 1982, prior to the defendant's trial for possession of a firearm by a convicted felon, Sergeant Cook testified that Officer Robert Bridges read the defendant his *Miranda* rights at the police station from a standard form used during the booking process. Sergeant Cook stated that he interjected that the *Miranda* warning was applicable not only to the disorderly conduct and DWI charges for which the defendant had already been arrested, but also to a possible charge relating to possession of the handgun found in the defendant's car. The sergeant also testified that, after the defendant responded that he understood each *Miranda* right and that he wanted to answer the police's questions without the aid of a lawyer, the defendant said, "I took [the gun] from my [step]father just like I took the car from my mother. I didn't have either one's permission." The defendant reportedly said that the reason he took the gun was to practice target shooting. Sergeant Cook said that when the defendant was asked about the gun and informed of the consequences of possessing it, he remarked, "Ah hell, I don't care if I go to jail."

Officer Bridges testified at the suppression hearing that he left the questioning of the defendant to Sergeant Cook and that the *only*

statement he made to the defendant was about an additional charge of reckless operation. Officer Bridges stated that he could not recall whether Sergeant Cook had read the *Miranda* rights to the defendant before questioning him. He testified that his only purpose in being in the booking room at the time of the defendant's interrogation was to complete paperwork concerning the automobile accident. No waiver-of-rights form appears in the record to indicate that the defendant had been read his rights.

At the conclusion of the suppression hearing, defense counsel argued that the State had not proved beyond a reasonable doubt that the defendant had been warned of his *Miranda* rights. *See State v. Gullick*, 118 N.H. 912, 915, 396 A.2d 554, 555 (1978). Subject to the defendant's objection and exception, the trial judge denied the defendant's motion to suppress, making the following finding:

> "I am satisfied that the *Miranda* rights were read to the defendant at the police station. *I am not satisfied that I know who read them, and there has been no testimony from the defendant that those [rights] were not read to him.* On the state of the record I am certainly able to find that those rights were read."

(Emphasis added.)

The defendant was tried before a jury for possession of a firearm by a convicted felon. At trial, Sergeant Cook and Officer Bridges repeated the substance of their testimony given at the suppression hearing, including the above-quoted incriminating statements made by the defendant. The jury found the defendant guilty of the offense, and he then appealed to this court.

■ Before statements made by a criminal defendant during custodial interrogation may be introduced into evidence in this State, the prosecution must prove beyond a reasonable doubt that the defendant was warned of his constitutional rights, that he waived those rights, and that the statements were given voluntarily, knowingly, and intelligently. *State v. Gullick*, 118 N.H. at 915, 396 A.2d at 555 (citing *State v. Phinney*, 117 N.H. 145, 146, 370 A.2d 1153, 1153 (1977)); *see State v. Bushey*, 122 N.H. 995, 999, 453 A.2d 1265, 1267 (1982). Based upon the record before the trial court at the suppression hearing, we do not believe that the State proved beyond a reasonable doubt that the defendant was advised of his *Miranda* rights.

Contrary to the State's reading of the record in this case, we find a sharp conflict in the testimony of Sergeant Cook and Officer Bridges concerning whether the defendant was warned of his rights. Sergeant Cook clearly and unequivocally testified that Officer

Bridges read the defendant his *Miranda* rights from a standard police departmental form. Officer Bridges, on the other hand, was certain that the *only* statement he made to the defendant at the police station was about a reckless operation charge. He could not recall whether Sergeant Cook informed the defendant of his rights. While other testimony during the suppression hearing could support an *inference* that the defendant had been warned of his rights, we do not believe this was sufficient to sustain a finding beyond a reasonable doubt that the defendant had been informed of his constitutional rights in light of the contradictory testimony of the police officers. The State has not asserted that the *Miranda* warnings read to the defendant at the hospital were constitutionally sufficient to render admissible his statements made at the police station.

The trial court's own statement at the conclusion of the suppression hearing undermines its finding that the State had met its burden of proof on the issue. The trial judge remarked that he was "satisfied that the *Miranda* rights were read to the defendant at the police station," even though he was "not satisfied that I know who read them."

■■ Moreover, the record shows that the trial court improperly apportioned the burden of proof as to whether the defendant was read the *Miranda* warnings. The trial judge supported his finding with the fact that "there has been no testimony from the defendant that those [rights] were not read to him." It is clear that the defendant was under no obligation to present testimony that his rights were not read to him. The burden rests squarely upon the *State* to prove beyond a reasonable doubt that the defendant was warned of his *Miranda* rights. *State v. Gullick,* 118 N.H. at 915, 396 A.2d at 555; N.H. SUPER. CT. R. 94. If the defendant had testified that he was not informed of his rights before being questioned, the trial court would have been correct in weighing the conflicting testimony in determining whether the State had met its burden of proof. *See State v. Noel,* 119 N.H. 522, 525–27, 404 A.2d 290, 292–93 (1979). It was improper, however, for the trial court to have considered any negative inference to be drawn from the defendant's failure to testify that he had not been given the *Miranda* warnings.

■■ We hold that the State failed to prove beyond a reasonable doubt that the defendant had been informed of his constitutional rights before he was subjected to custodial interrogation by the police. Consequently, any statements made by the defendant should have been suppressed. Because a "confession is a special type of evidence" and its "acceptance basically amounts to conviction," *State v.*

*Phinney*, 117 N.H. at 147, 370 A.2d at 1154, we reverse the defendant's conviction and remand the case for a new trial.

Although our holding with regard to the suppression question would ordinarily dispose of this appeal, we find it appropriate to comment upon another issue raised by the defendant. To prove the element of the offense that the defendant was a convicted felon, the prosecution introduced a certified copy of the disposition of an indictment charging the defendant with burglary, RSA 635:1. The back of the indictment indicates that the defendant pleaded guilty to the offense, but it does not show whether at the time he either was represented by counsel or had validly waived legal representation. For that purpose, the prosecution was allowed to introduce, over the defendant's objection and exception, a certified copy of the entire transcript of the hearing at which the defendant pleaded guilty to the burglary indictment and received a sentence.

At that same hearing, the defendant also pleaded guilty to misdemeanor charges of simple assault and escape and was sentenced on those offenses as well. The cover sheet of the transcript, as well as the first sentence of the transcript, indicated that the defendant was represented by counsel at the hearing.

■ The admission of the transcript was erroneous in two respects. First, the admissibility of evidence is a question of law for the trial judge, rather than a question of fact for the jury. *See State v. Thresher*, 122 N.H. 63, 71, 442 A.2d 578, 582 (1982). Assuming, without deciding, that a counseled felony conviction is a constitutional prerequisite for conviction under our State felon-possession statute, *Baldasar v. Illinois*, 446 U.S. 222, 226–29 (1980) (Marshall, J., concurring); *Burgett v. Texas*, 389 U.S. 109, 114–15 (1967); *but cf. Lewis v. United States*, 445 U.S. 55, 65–67 (1980) (counseled felony conviction not statutorily or constitutionally required under federal felon-firearm-possession statute in light of congressional intent), the judge, and not the jury, should have reviewed the transcript.

■■ Second, the reference in the transcript to the defendant's guilty plea to two misdemeanor offenses, in addition to the burglary indictment, was irrelevant and prejudicial. Compounding the prejudicial effect was the fact that one of the misdemeanors was an escape charge, which implied that the defendant had previously been incarcerated for yet another crime. Even if one were to assume that the transcript was relevant, the prejudicial effect of submitting the entire transcript to the jury clearly outweighed its probative value, especially in light of the fact that the cover sheet and the first sentence alone showed the defendant was represented by counsel

when he pleaded guilty to the burglary indictment. *But cf. State v. Donovan*, 123 N.H. 446, 447, 462 A.2d 125, 126 (1983) (probative value of contested evidence outweighed prejudicial effect); *State v. Fernald*, 123 N.H. 442, 445, 462 A.2d 122, 124 (1983) (same). This evidentiary ruling was an abuse of discretion and would have been an independent basis for reversing the defendant's conviction.

*Reversed and remanded for new trial.*

All concurred.