Strafford
No. 84-491

THE STATE OF NEW HAMPSHIRE

v.

SANDRA VARAGIANIS

July 9, 1986

*Stephen E. Merrill,* attorney general (*Edna M. Conway,* assistant attorney general, on the brief, and *Kathleen A. McGuire,* attorney, orally), for the State.

*James E. Duggan,* appellate defender, of Concord, by brief and orally, for the defendant.

BROCK, J.   The defendant, Sandra Varagianis, was convicted in Superior Court (*Dalianis,* J.) of transporting a controlled substance in violation of RSA 318-B:2, I. On appeal, she makes two arguments: (1) that the two-year delay between the date of the alleged offense and the return of an indictment against her prejudiced her and denied her due process of law; and (2) that the trial court erroneously admitted hearsay evidence at her trial. For the reasons that follow, we affirm.

In early 1981, Ross Bentley, while acting as an informant in a drug trafficking investigation in the Seacoast area, arranged to purchase one pound of marijuana from Bruce Viel, owner of the Rochester Car Care. Bentley and Viel agreed to meet at Rochester Car Care at 8:00 a.m. on February 10. At trial, Bentley testified that shortly after 8:00 a.m., the defendant drove up in a brown Chevrolet pickup truck. From inside the Car Care building, Bentley observed Viel meet the defendant outside and saw the defendant hand Viel a brown paper bag. Viel immediately returned to the Car Care building and gave Bentley the bag in exchange for $450.

During the transaction, two State troopers who were involved in the investigation were parked nearby. Trooper Presby testified that he and Trooper Nims positioned themselves in two locations near the Rochester Car Care. Presby, who was in a parking lot approximately 500 feet from Car Care, also testified that at about 8:30 a.m. he observed a brown pickup truck, which he recognized as belong-

ing to Angelo Varagianis, drive up to the Car Care premises, stay for a short period of time, and then leave. Trooper Nims, who was parked closer to Car Care, testified that the driver "appeared to be a female, longish, colored-lightish brown hair and blond hair and slim features."

■■ At her trial, the defendant denied delivering the marijuana, but was unable to remember with specificity her whereabouts on February 10, 1981, other than to say that she was "at the gym" which she and her husband owned. On appeal, the defendant argues that the two-year delay between the date of the alleged offense and her indictment in February 1983 "prejudiced [her] and denied her due process of law." While it is true that the State and Federal Constitutions guarantee an accused the right to a speedy trial, N.H. CONST. pt. I, art. 14; U.S. CONST. amends. VI, XIV, this right is "relative, and must be considered with regard to the practical administration of justice." *Riendeau v. Milford Municipal Court*, 104 N.H. 33, 34, 177 A.2d 396, 398 (1962). The applicable statute of limitations provides "the primary guarantee against bringing overly stale criminal charges." *United States v. Marion*, 404 U.S. 307, 322 (1971) (quoting *United States v. Ewell*, 383 U.S. 116, 122 (1966)). In the instant case, the defendant was indicted well within the six-year statute of limitations for felonies. RSA 625:8, I.

■■ The due process clause has also been recognized as having "a limited role to play in protecting against oppressive delay." *United States v. Lovasco*, 431 U.S. 783, 789 (1977); *see also United States v. Marion, supra* at 324. In *State v. Philibotte*, 123 N.H. 240, 459 A.2d 275 (1983), we recognized that "an arbitrary delay between the time of an offense and the arrest or indictment of a defendant may result in a denial of due process," *id.* at 244, 459 A.2d at 277, and followed the standard enunciated in *United States v. Marion supra* for determining when such a denial results. *Philibotte, supra* at 244, 459 A.2d at 277. First, the defendant must show that actual prejudice resulted from the delay. Then, the trial court must balance the resulting prejudice against the reasonableness of the delay. *Id. See also United States v. Lovasco*, 431 U.S. at 790.

■ The defendant argues that she was prejudiced because the delay hampered her preparation of a defense. She claims that her memory of the day in question had dimmed and that therefore she was unable to recall her whereabouts at the time of the alleged offense. She also asserts that the informant, Ross Bentley, had a "very poor memory" of the alleged incident. The defendant admits, however, that dimming of memories, alone, is insufficient to show actual

prejudice. *See State v. Lacourse,* 127 N.H. 737, 741, 506 A.2d 339, 341 (1986); *Philibotte, supra* at 244, 459 A.2d at 277; *United States v. Marion,* 404 U.S. at 325–26. Thus, she further asserts that the loss of two potential eyewitnesses also resulted from the delay. At trial, Bentley testified that two other people were at Car Care at the time of the incident, but that he was unable to identify either of them. The defendant claims that had the indictment not been delayed, Bentley might have been able to remember who the people were. This claim is speculative at best. There is no evidence that Bentley ever knew the identity of the potential witnesses. Thus, whether the delay somehow contributed to the loss of potential witnesses is open to considerable doubt. On the facts presented, we conclude that the defendant has failed to meet her burden of proving actual prejudice.

Additionally, assuming *arguendo* that the defendant had met her burden with respect to prejudice, we would have to balance that prejudice against the reasonableness of the delay. The State articulated several reasonable explanations for the two-year delay, including maintaining the secrecy of the informant's identity until completion of an on-going drug trafficking investigation and the unwillingness of the informant to testify due to his fear for his own personal safety. Clearly, the delay in this case was not unreasonable and would not be the basis for a finding that the defendant had been denied due process. Therefore, we find that the trial court correctly denied the defendant's motion to dismiss.

The defendant next claims that the trial court erroneously admitted hearsay into evidence over her objection. The exchange upon which the defendant relies is as follows:

"Q. [By the State of the witness Bentley:] And I believe your last statement after that was you waited for Ms. Varagianis to come?

A. Yes.

Q. Did you expect her to arrive?

A. Yes.

Q. How was it you expected her to arrive?

A. Bruce had told me.

[Defense:] Objection, Your Honor, hearsay.

The Court: Ms. Conway.

[State:] I'll rephrase the question, Your Honor.

| | |
|---|---|
| The Court: | Fine. |
| Q. [By the State:] | In the course of setting up this deal, did you learn that Ms. Varagianis would be making this delivery? |
| A. | Yes, I did. |
| [Defense:] | Objection, Your Honor. |
| The Court: | Basis? |
| [Defense:] | Hearsay. |
| The Court: | Response? |
| [State:] | I don't think it's hearsay, Your Honor. He hasn't stated any out-of-court statement; he's stated he learned it in the course— |
| The Court: | Overruled; your exception." |

The defendant contends that Bentley's response "Yes, I did" is equivalent to "Yes, I learned that Sandra Varagianis would be making this delivery," and that the latter is hearsay. We do not agree.

■ Hearsay is defined as "an out-of-court statement offered [in court] to prove the truth of the matter asserted in the statement." *Caledonia, Inc. v. Trainor*, 123 N.H. 116, 121, 459 A.2d 613, 616 (1983); *see also* N.H. R. Ev. 801(c). Looking at the responses in the context of the line of questioning, we are not convinced that, as the defendant suggests, the information was elicited to prove the truth of the matter asserted in the statement; that is, that the defendant would be making the delivery. The State in its brief maintains, and we find it more likely, that "the information was elicited to establish why [Bentley] stood in the garage and looked through the glass doors waiting for the Varagianis' brown pickup to arrive . . . and not for the truth of the matter asserted."

■ The defendant further avers that, on virtually identical facts, we reversed a drug sale conviction in *State v. Ruelke*, 116 N.H. 692, 366 A.2d 497 (1976). The offending statement in *Ruelke* was that "[h]e, Mr. Lawrence, stated that he just came from Chesterfield and that he had purchased the quantity of marijuana from Dennis McAlary and Peter Ruelke for a hundred fifty dollars." *Id.* This statement was clearly offered and admitted for the purpose of proving its truth, that the defendant had sold marijuana to the out-of-court declarant. Since the statement in the present case was not offered

for its truth, our holding is consistent with *Ruelke*. Therefore, we conclude that the trial court did not err in admitting the proffered testimony.

*Affirmed.*

SOUTER, J., did not sit; the others concurred.