Hillsborough
No. 85-088

THE STATE OF NEW HAMPSHIRE

v.

CHRISTOS SVOLEANTOPOULOS

June 6, 1988

*Stephen E. Merrill*, attorney general (*Robert E. McDaniel*, assistant attorney general, on the brief and orally), for the State.

*Perkins, Phillips and Waters*, of Concord, and *Joseph M. Flak*, of Boston, Massachusetts (*Roger B. Phillips* and *Mr. Flak* on the brief, and *Mr. Flak* orally), for the defendant.

SOUTER, J. Having been convicted in the Superior Court (*Wyman*, J.) on charges of possessing a controlled drug and possessing a controlled drug with intent to sell, RSA 318-B:2, I, the

defendant appeals the denial of his pretrial motion for disclosure of an informer's identity. We affirm.

Late in 1983, detectives of the Manchester Police Department received anonymous tips that the defendant, Christos Svoleantopoulos, and his father were selling cocaine and heroin from a local apartment they occupied together. In February 1984, a confidential informer confirmed the tips, and, after the police had verified some details of the informer's allegations, they relied in part upon his information to obtain a warrant to search the apartment and the defendant's car.

While executing the warrant, the police shot and killed the defendant's father and seized the following evidentiary materials from one of the apartment's bedrooms that contained documents addressed to the defendant: a revolver, a bankbook bearing the defendant's name, ten one hundred dollar bills, an Ohaus scale, one package containing marijuana and two containing cocaine, a ten-dollar bill rolled into the shape of a straw, a cocaine strainer, several "Sno Seals" packages, a book describing narcotics use and what appeared to be a ledger of transactions. More narcotics paraphernalia were found elsewhere in the apartment, and the search of the car yielded another scale and two plastic bags containing white powder.

Prior to trial on the indictments noted above, the defendant moved for disclosure of the informer's name and address, on the ground that the informer would be a material witness who could testify "whether or not [the defendant's father] was dealing drugs." The defendant claimed that he "would intend to call [the informer] at . . . trial in order to differentiate between the subjects that are mentioned in the search warrants." The motion was denied and the defendant proceeded to trial, at which he admitted his possession of the gun, admitted that it was his bedroom in which drugs were found, but denied any participation in the drug traffic that evidently had occurred at the apartment. He claimed instead that only his father had been involved, and he argued to the trial court, as he does to us, that he should have had the opportunity to question the informer for evidence that the father alone had engaged in criminal drug activity.

After the guilty verdicts the case followed a rocky procedural course. When we declined to accept the appeal under Supreme Court Rule 7, the defendant went into the United States District Court seeking habeas relief, which was denied by Loughlin, J. *See Svoleantopoulos v. State of New Hampshire*, No. C85-529-L (D.N.H. July 25, 1986). While the defendant's ensuing appeal was pending

in the First Circuit, that court decided *Bundy v. Wilson*, 815 F.2d 125 (1st Cir. 1987), whereupon the appeal was withdrawn by agreement, and the defendant was allowed to resubmit his notice of appeal to this court, accompanied by a statement of reasons urging us to accept the case. We did so, but restricted our review to the error claimed in the trial court's refusal to grant the motion to disclose.

The character of that supposed error is not identified with any exactness. Although the original pretrial motion was devoid of any citation to authority, it is clear that the defendant now rests on *Roviaro v. United States*, 353 U.S. 53 (1957), which his brief assumes was a due process case, despite the United States Supreme Court's own description of it as an exercise of supervisory jurisdiction over the lower federal courts, *McCray v. Illinois*, 386 U.S. 300, 309 (1967). The distinction, however, may be a fine one at this point. Since the *Roviaro* opinion spoke of a fundamental fairness requirement, *Roviaro, supra* at 60, we can probably say that if the principles of *Roviaro* would not afford relief, fourteenth amendment due process, as invoked by the defendant, would not be any more favorable to him.

We can say with even greater assurance that the practical significance of *Roviaro* is less debatable than its constitutional underpinning, and we can summarize its operative holding with brevity. As against the State's qualified evidentiary privilege to withhold its informer's identity, *Roviaro* recognized that a defendant's request for disclosure should prevail when the information would be relevant and helpful to the defense and essential to a fair determination of the cause. *Roviaro, supra* at 60–61; *State v. Schena*, 110 N.H. 73, 74–75, 260 A.2d 93, 94 (1969). Determining that point of essential need is a process of weighing the supposed value of disclosure to the defendant against the public interest in protecting informers and encouraging citizens to give evidence. *Roviaro*, 353 U.S. at 62. A court must assign values to these competing interests in light, *inter alia*, of the specific crime charged, the possible defenses to it, and the possible significance of the informer's testimony. *Id.*

In the years of litigation that have followed *Roviaro*, a consensus pointing toward at least one general rule has emerged: if it appears that the informer was neither a participant in nor a witness to a particular act or transaction charged in the indictment, the defendant is not entitled to disclosure. *See, e.g., United States v. Halbert*, 668 F.2d 489, 496 (10th Cir.), *cert. denied*, 456 U.S. 934

(1982); *United States v. Jiles,* 658 F.2d 194, 197 (3d Cir.), *cert. denied,* 455 U.S. 923 (1982); *United States v. Diaz,* 655 F.2d 580, 588 (5th Cir. 1981), *cert. denied,* 455 U.S. 910 (1982); *United States v. Skramstad,* 649 F.2d 1259, 1265 (8th Cir. 1981). *See also United States v. Alvarez,* 472 F.2d 111, 113 (9th Cir.), *cert. denied,* 412 U.S. 921 (1973). That is, indeed, the First Circuit's conclusion, as Judge Loughlin noted in his order, which quoted from *United States v. Hemmer,* 729 F.2d 10, 15 (1st Cir.), *cert. denied,* 467 U.S. 1218 (1984):

"[The informant] was not a witness or participant in the crime, but rather was a 'tipster.' *See Johnson v. Wyrick,* 653 F.2d 1234, 1239 (8th Cir. 1981); *United States v. Barnes,* 486 F.2d 776, 778 n.3 (8th Cir. 1973) ('In cases involving the "tipster" type of informant, who merely conveys information to the government but neither witnesses nor participates in the offense, courts generally hold that disclosure is not material and therefore not required.'). In addition, the government did not mention him in its case in chief, nor did it use the information he provided."

The First Circuit's description of the tipster's relation to the offense charged in *Hemmer* could serve equally well to state the informer's role in relation to the indictments before us, and the tipster rule governs this appeal just as obviously as it disposed of the habeas claim before Judge Loughlin. The defendant was not charged with a discrete act or transaction, *cf. United States v. Silva,* 580 F.2d 144, 146 (5th Cir. 1978); *United States v. Tucker,* 552 F.2d 202, 204 (7th Cir. 1977), committed in the presence of the informer, but with a possessory act independent of the informer's participation and observation. There is no indication that the informer was present at the place of possession on the date and at the time indicated by the evidence, and he could have revealed nothing about the circumstances in the apartment or in the car when the police searched them and arrested the defendant.

■ It is, of course, theoretically possible that the informer's testimony might have lent some support to the defendant's implausible denial of any active connection with the evidence found in his bedroom, but mere speculation about usefulness is not enough to satisfy a defendant's burden to demonstrate his real need for the disclosure he seeks. *See United States v. Tucker, supra* at 209; *United States v. Estrella,* 567 F.2d 1151, 1153 (1st Cir. 1977). If it were, a defendant would always win the balancing test, and the

government's qualified privilege would vanish into just so many words. *United States v. Jiles, supra* at 198 n.4. Here, indeed, the speculation was virtually without substance, running as it did against both the strong circumstantial evidence culled from the defendant's bedroom and car, *see United States v. Alvarez*, 472 F.2d at 113 (court may consider that informer's evidence probably would not be exculpatory), and the indication in the search warrant's affidavit that the informer's testimony would lend no support to the defense, *see id.* We need only add that the defendant's own inaction belies any assertion that one of his father's former associates or customers might have been able to provide favorable testimony. The defendant has never claimed that he made an effort to locate any of the people he was in a position to see visiting the apartment, or any of the customers disclosed in the ledger found in his bedroom.

The defendant has made no showing that disclosure was essential to a fair trial, *Roviaro v. United States*, 353 U.S. at 60-61, or would even have aided him significantly in asserting his defense, *see United States v. Diaz*, 655 F.2d at 588. No reason appears to exempt this case from application of the general rule that the identity of a tipster need not be disclosed.

*Affirmed.*

All concurred.