Hillsborough
No. 87-193
No. 87-194

THE STATE OF NEW HAMPSHIRE

v.

JESUS RAMOS

December 28, 1988

*Stephen E. Merrill*, attorney general (*Michael D. Ramsdell*, attorney, on the brief), by brief for the State.

*Joanne Green*, assistant appellate defender, of Concord, by brief for the defendant.

THAYER, J. The defendant appeals from two separate convictions for the illegal sale of a narcotic drug in violation of RSA 318-B:2. The defendant was convicted following a jury trial and sentenced to serve from 5 to 15 years in prison for a drug sale which occurred on April 4, 1985 (case No. 85-2116), and was convicted following a second jury trial and sentenced to a term of 3 1/2 to 7 years for a drug sale which occurred on September 13, 1985 (case No. 85-2117). This court consolidated the defendant's two appeals. The defendant challenges his convictions on four grounds: that the Trial Court (*Bean*, J.) erred (1) in denying his motion to dismiss the first indictment (No. 85-2116) for failure of the State to disclose

the identity of its confidential informant; (2) in denying his motion to dismiss the first indictment (No. 85-2116) because the State's delay in arresting the defendant caused him actual prejudice; (3) in allowing the State to impeach the defendant with prior convictions at both trials; and (4) in allowing into evidence as a full exhibit at the first trial a copy of the defendant's 1971 drug conviction. For the reasons that follow, we affirm.

The facts underlying the defendant's first conviction are as follows. On April 4, 1985, Detective Brackett of the Nashua Police Department, and two detectives from the Manchester Police Department, were conducting an undercover investigation at Judy's Bar on Pine Street in Manchester. At approximately 9:25 p.m., Detective Brackett and a confidential informant entered the bar through the rear door. Once inside the bar, they were approached by one Anselmo Gotay Pacheco. The confidential informant introduced Detective Brackett to Pacheco. At some point, after introducing the two, the informant walked toward the front of the bar to get a beer. Detective Brackett told Pacheco that he wished to purchase some cocaine. Pacheco then walked several feet away, to where the defendant was standing. Detective Brackett saw the defendant remove several small glassine baggies from his pocket and hand them to Pacheco. Pacheco then returned to where Detective Brackett was located and sold the drugs to him. The substance contained in each of the baggies was subsequently identified as cocaine. After the sale was completed, Detective Brackett left the bar, followed shortly thereafter by the confidential informant. The informant then met Detective Brackett outside the bar and asked him if he had obtained any cocaine.

The defendant was arrested on October 25, 1985, and charged with the illegal sale of a narcotic drug. At trial, the defendant testified that although he frequented Judy's Bar, he was uncertain as to whether he was there on April 4, 1985. He admitted to knowing Pacheco but denied having given drugs to Pacheco to sell.

On September 13, 1985, the date of the action from which the defendant's second conviction stems, Detective Richard O'Leary of the Manchester Police Department was continuing the undercover drug investigation of Judy's Bar on Pine Street and of the apartments located above the bar. At approximately 7:45 p.m., Detective O'Leary climbed the rear fire escape of the building and knocked on the door of an apartment. The defendant opened the door, and Detective O'Leary told the defendant that he wished to purchase some cocaine. The defendant then went into the kitchen

and removed a plastic bag containing cocaine from the refrigerator and sold it to Detective O'Leary.

At trial, the defendant testified that, while he could not remember where he was on September 13, 1985, he was not in an apartment over Judy's Bar selling drugs.

We first address the defendant's argument that the State's failure to disclose the identity of the confidential informant constituted sufficient grounds upon which to dismiss the April 4 charge. Following a pretrial hearing on the defendant's motion to compel disclosure of the confidential informant, the Trial Court (*Wyman*, J.) denied the motion, finding that "the confidential informant . . . was not established to have been an eye witness to the alleged offense." After a subsequent hearing, the Trial Court (*Bean*, J.) upheld the prior determination.

The defendant argues that he was denied his due process rights under the United States Constitution (presumably the fifth and fourteenth amendments) and under part I, article 15 of the New Hampshire Constitution to "produce all proofs that may be favorable to himself." N.H. CONST. pt. I, art. 15. When a defendant invokes both the State and Federal Constitutions, we will consider the State claim before addressing the federal claim. *See State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983); *cf. State v. King*, 131 N.H. 173, 176, 551 A.2d 973, 975 (1988). Accordingly, we first address the defendant's State claim independently. As an issue of State constitutional law, the defendant's claim is a question of first impression. *Cf. State v. Arthur*, 118 N.H. 561, 391 A.2d 884 (1978); *State v. Thorp*, 116 N.H. 303, 358 A.2d 655 (1976). However, we have the benefit of considerable case law decided under the Federal Constitution for guidance.

■■ We have held that, in determining whether disclosure of a confidential informant's identity is necessary to afford the defendant a right to a fair trial, the trial court must, based upon the particular circumstances of the case and the possible significance of the informant's testimony, balance the "'public interest in protecting the flow of information against the individual's right to prepare his defense.'" *State v. Thorp*, 116 N.H. at 310, 358 A.2d at 661 (quoting *Roviaro v. United States*, 353 U.S. 53, 62 (1957)). A trial court may compel disclosure "when there is evidence demonstrating that the informant was a participant in the illegal activity charged 'to such an extent that his testimony may be considered essential to a fair determination of the issue of guilt or innocence . . . .'" *State v. Berger*, 125 N.H. 83, 93, 480 A.2d 27, 33 (1984) (quoting *State v. Schena*, 110 N.H. 73, 74–75, 260 A.2d 93,

94 (1969)). The key question, then, is whether the informant's testimony was material to the defendant's defense. *See State v. Breest*, 118 N.H. 416, 419, 387 A.2d 643, 645 (1978), *cert. denied*, 442 U.S. 931 (1979); *see also State v. Arthur*, 118 N.H. at 563, 391 A.2d at 885.

In *State v. Berger supra*, the defendant argued that the confidential informant's testimony at trial was essential to his defense, where controverted evidence indicated that the informant might have been present at the drug transaction for which the defendant was charged. *Berger, supra* at 92, 480 A.2d at 33. Observing that the defendant's claim that the confidential informant participated in the illegal drug sale was unsubstantiated, this court held that "it cannot be assumed for purposes of our review that the State informant participated in the illegal sale to such a degree that his or her testimony would be essential to a fair adjudication of the defendant's guilt or innocence." *Berger, supra* at 93, 480 A.2d at 33. Similarly, in *State v. Arthur supra*, we held that reversal of the defendant's conviction for failure to disclose an informant was unwarranted where the defendant "ha[d] not determined what the informer's testimony would [have been] if called as a witness [and] [t]here was nothing to indicate that the informer's testimony would in any way [have] aid[ed] the defendant." *Arthur, supra* at 563, 391 A.2d at 885.

Here, the trial court's finding, that the evidence was insufficient to establish that the informant was a witness to the transaction, is supported by the record. Detective Brackett testified that the informant had walked away before the drugs changed hands, although he could not say whether the informant had been able to witness the transaction from his location. Detective Brackett also testified that once outside the bar, the informant had asked whether Detective Brackett had been successful in obtaining drugs, indicating that the informant had not witnessed the transaction.

 On these facts, as in *Berger*, the defendant's claim that the informant may have witnessed the drug sale is unsubstantiated. Thus, the defendant can only speculate as to what the informant might have testified to, and whether such testimony would have aided in his defense. *See State v. Svoleantopoulos*, 130 N.H. 471, 474, 543 A.2d 410, 412 (1988) (mere speculation regarding usefulness of informant's testimony insufficient to satisfy defendant's burden to prove need for disclosure); *State v. Arthur*, 118 N.H. at 563, 391 A.2d at 886. In view of the inconclusive evidence presented, and the speculative significance of the informant's testimony, we hold that the trial court's denial of the defendant's motion to dismiss,

for failure to disclose the identity of the confidential informant, was not an abuse of discretion, *see State v. Berger*, 125 N.H. at 93, 480 A.2d at 33, and resulted in no denial of the defendant's due process right under part I, article 15 of the New Hampshire Constitution.

Because the protection afforded under the Federal Constitution relative to the disclosure of the identity of confidential informants is no greater than that under our own State Constitution, we need not address the defendant's federal claim. *See State v. Ball*, 124 N.H. at 232, 471 A.2d at 351; *see also State v. Breest*, 118 N.H. at 419, 387 A.2d at 645.

We note briefly the defendant's related argument that the indictment should have been dismissed because the State failed to preserve potentially relevant evidence, *i.e.*, the testimony of the informant, by failing to maintain contact with the informant. The defendant relies on a line of cases involving evidence in the possession or under the control of the State which is lost or destroyed. However, in light of our holding that the failure to disclose the identity of the informant did not warrant dismissal of the defendant's indictment, whether, as the defendant argues, the State "lost" the informant is of no consequence.

The defendant next argues that the indictment should have been dismissed because the State's delay in arresting him, and the resulting unavailability of the informant, caused prejudice to the defendant and denied his right to due process under both the State and Federal Constitutions.

■ Before addressing the substance of the defendant's argument, we must first clarify the scope of the question to be decided. "[T]he defendant must fulfill two preconditions before triggering a State constitutional analysis: first, the defendant must raise the State constitutional issue below . . . ; second, the defendant's brief must specifically invoke a provision of the State Constitution . . . ." *State v. Dellorfano*, 128 N.H. 628, 632, 517 A.2d 1163, 1166 (1986).

In the present case, the defendant failed to invoke specifically a provision of the State Constitution in his brief relative to this issue. Rather, the defendant makes general reference to "State and Federal Due Process" and directs our attention only to cases decided on federal constitutional grounds. *Cf. State v. Bradberry*, 129 N.H. 68, 72, 522 A.2d 1380, 1382 (1986) (distinguishing case of "mere passing reference" to State Constitution). Moreover, at the trial level, the defendant's sole reference to the State Constitution relative to this issue was a passing reference to "the due process clauses of both the State and Federal Constitutions," made in the context of arguing several grounds for dismissal. Because the

defendant has failed to meet his procedural burden of properly raising a State constitutional issue, we address only his federal claim. *See State v. Dellorfano, supra* at 633, 517 A.2d at 1166; *see also State v. Cimino*, 126 N.H. 570, 572–73, 493 A.2d 1197, 1200 (1985) (cautioning defendants to raise clear State constitutional claims at the trial level in order to invoke the rule in *State v. Ball* on appeal).

■ In interpreting federal due process requirements in this context, we have held that the applicable statute of limitations for an offense "provides 'the primary guarantee against bringing overly stale criminal charges.'" *State v. Varagianis*, 128 N.H. 226, 228, 512 A.2d 1117, 1119 (1986) (citation omitted) (quoting *United States v. Ewell*, 383 U.S. 116, 122 (1966)); *see also State v. Philibotte*, 123 N.H. 240, 244, 459 A.2d 275, 277 (1983) (prosecution presumed timely if charges brought within statute of limitations). The defendant in this case was arrested and indicted approximately seven months after the date on which the offense was committed, well within the six-year statute of limitations for felonies. *See* RSA 625:8, I.

■ We have recognized that the due process clause also has a "'limited role to play in protecting against oppressive delay.'" *State v. Varagianis, supra* at 228, 512 A.2d at 1119 (quoting *United States v. Lovasco*, 431 U.S. 783, 789 (1977)). Under certain circumstances, the State's delay in bringing criminal charges against a defendant may cause actual prejudice to the defendant and result in a denial of due process. *See United States v. Marion*, 404 U.S. 307, 324 (1971); *State v. Varagianis, supra* at 228, 512 A.2d at 1119. In such cases, the defendant must first demonstrate that actual prejudice resulted from the delay. *United States v. Lieberman*, 608 F.2d 889, 902 (1st Cir. 1979), *cert. denied*, 444 U.S. 1019 (1980). Then, the trial court must balance the resulting prejudice against the reasonableness of and the reasons for the delay. *Id.*; *State v. Varagianis, supra* at 228, 512 A.2d at 1119; *see also United States v. Lovasco, supra* at 790; *United States v. Marion, supra* at 325 (distinguishing case of intentional delay to gain a tactical advantage or harass the defendant).

■ As stated in the preceding paragraphs, the trial court in this case found the evidence insufficient to establish whether the informant was an eyewitness to the drug transaction, and thus whether his testimony could have aided the defendant in his defense. Moreover, whether the State's alleged delay contributed to the loss of the informant is open to some doubt. On these facts, we

hold that the defendant failed to demonstrate actual prejudice resulting from the State's delay, and that the trial court therefore did not err in denying the defendant's motion to dismiss.

The defendant's third argument, that the trial court erred in allowing the State to impeach the defendant's credibility with his prior convictions, is also unavailing. During the first trial, the State, on cross-examination, used three convictions to impeach the defendant: a 1981 conviction for second degree assault, a 1981 conviction for the felonious use of a firearm, and a 1981 conviction for unlawful possession of a firearm by a felon. At the second trial, the State used the first and second of these convictions for impeachment purposes.

■ Under New Hampshire Rule of Evidence 609(a), "'evidence of prior convictions is admissible if it will be of assistance in properly evaluating the testimony of the defendant witness and if its probative value exceeds its prejudicial effect.'" *State v. Hickey,* 129 N.H. 53, 57, 523 A.2d 60, 63 (1986) (quoting *State v. Vanguilder,* 126 N.H. 326, 330, 493 A.2d 1116, 1120 (1985)). The rule provides in relevant part:

> "For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted . . . but only if . . . the probative value of admitting this evidence outweighs its prejudicial effect to the defendant . . . ."

N.H. R. Ev. 609(a). The determination of whether the probative value of the evidence outweighs its prejudicial effect is within the trial court's sound discretion, and we will not reverse the trial court's determination absent evidence of abuse. *See State v. Hickey, supra* at 59, 523 A.2d at 64; *State v. Staples,* 120 N.H. 278, 283, 415 A.2d 320, 323 (1980).

■ Here, the trial court specifically found that the prior convictions were "within the parameters established by Rule 609," and ruled that the probative value of the convictions outweighed their prejudicial effect. The defendant argues on appeal that the need to impeach the defendant's credibility by introducing these prior convictions was "slight" and the prejudice "substantial." The issue of the defendant's credibility was particularly important, however, because the only two witnesses to each of the alleged offenses who testified at trial were a police officer and the defendant himself. If, as the defendant argues, he was prejudiced at the first trial by the jury's attention being diverted to the prior offenses, the prejudice, if any, was self-induced when the defendant

presented the jury with an unnecessarily lengthy explanation of these past offenses. Indeed, at the second trial, when the State again offered the defendant an opportunity to explain his prior convictions, defense counsel wisely objected before the defendant could repeat his lengthy dissertation. Moreover, at both trials, the court gave limiting instructions to the jury regarding the use of the prior convictions, to the effect that they could be considered for impeachment purposes only, rather than to show that the defendant acted in conformity therewith. On these facts we find no abuse of discretion by the trial court in admitting the evidence.

Finally, the defendant argues that the trial court abused its discretion in allowing into evidence as a full exhibit a copy of the defendant's 1971 drug conviction. The defendant concedes, as he must, that "[a]llowing the use of the 1971 conviction, otherwise barred under Rule 609(b) for its remoteness, in order to contradict the defendant's testimony was . . . unobjectionable." *See State v. Pugliese*, 129 N.H. 442, 443, 529 A.2d 925, 926 (1987); *see also* N.H. R. Ev. 609(b) (convictions more than 10 years old admissible only in limited circumstances). The defendant argues, however, that the prejudicial effect of admitting the copy of the conviction as a full exhibit "clearly outweigh[ed] its relevance," citing *State v. Berube*, 123 N.H. 771, 776, 465 A.2d 509, 513 (1983). In *Berube*, we held that the prejudicial effect of submitting to the jury an entire transcript, which included references to two prior offenses which were not otherwise admissible, when the introduction of only part of the transcript was necessary to determine the fact at issue, clearly outweighed any probative value of the evidence. *Id.*

In this case, the State introduced evidence of the drug conviction during the first trial when the defendant falsely stated that he had never been arrested for anything other than acts of violence. When the defendant was given an opportunity to explain the circumstances of the conviction, he falsely testified that he had not pleaded guilty but that he had been found guilty, and that, in any event, he had not been guilty because the drugs had belonged to someone else. It was only after the defendant's denial of the guilty plea, and his lengthy and confused testimony, that the State moved to admit a copy of the conviction as an exhibit. Where the defendant himself presented the jury with the substance of the conviction before the State sought to admit the copy into evidence, and where the trial court's limiting instructions encompassed all of the defendant's prior convictions, we find no abuse of discretion by the trial court in admitting the copy of the 1971 conviction as an exhibit.

The other issues raised by the defendant in his notice of appeal were not briefed, and are therefore deemed waived. *Daboul v. Town of Hampton*, 124 N.H. 307, 309, 471 A.2d 1148, 1149 (1983).

*Affirmed.*

All concurred.