Belknap
No. 93-261

THE STATE OF NEW HAMPSHIRE

v.

RONALD MARTIN

May 24, 1994

510

*Jeffrey R. Howard*, attorney general (*Mark D. Attorri*, assistant attorney general, on the brief and orally), for the State.

*Twomey & Sisti Law Offices*, of Concord (*Mark L. Sisti* and *Jonathan R. Saxe* on the brief, and *Mr. Saxe* orally), for the defendant.

THAYER, J. The defendant, Ronald Martin, was convicted on eight counts of aggravated felonious sexual assault, RSA 632-A:2, II (Supp. 1993), after a jury trial in the Superior Court (*Fauver*, J.). On appeal, the defendant argues: (1) the Trial Court's (*Smith*, J.) retrospective application of extensions to the statute of limitations violated the *ex post facto* and due process clauses of both the New Hampshire and United States Constitutions; (2) the evidence presented at trial was insufficient to establish that the prosecution was brought both within the statute of limitations and prior to the vic-

tim's thirteenth birthday; (3) the trial court erroneously admitted prior consistent statements of the victim; and (4) the prosecutor's reference in her opening statement to the defendant's post-offense behavior and the victim's testimonial allusion to other bad acts of the defendant necessitated a mistrial. We affirm.

The defendant's convictions stemmed from eight indictments handed down on January 7, 1992. Overall, the indictments alleged that between April 11, 1981, and April 10, 1986, the defendant engaged in various acts of sexual penetration with the victim prior to her thirteenth birthday, April 11, 1986. Each numbered indictment corresponded to a certain one- or two-year time frame during which a particular type of sexual act allegedly took place.

Before trial, the defendant moved to dismiss all eight indictments, arguing that the applicable six-year statute of limitations, RSA 625:8, I (1986), had expired, and that retrospective application of the current statute of limitations, RSA 625:8, III(d) (Supp. 1993), represented an unconstitutional *ex post facto* application of the law. N.H. CONST. pt. I, art. 23; U.S. CONST. art. I, § 10. The motion was denied. After trial, the defendant filed two additional motions to dismiss, arguing, in part, that the prosecution failed to prove beyond a reasonable doubt that the alleged crimes occurred either during the applicable statute of limitations or before the victim's thirteenth birthday. The trial court denied these motions as well.

We begin our analysis by tracking the statute of limitations applicable to the defendant's alleged acts. Throughout the time span alleged in the indictments, April 11, 1981, through April 10, 1986, the statute of limitations was six years from the date of the offense. RSA 625:8 (1986). Effective January 1, 1987, four months prior to the earliest possible expiration of the original six-year period applicable to the defendant's alleged acts, the legislature extended the statute of limitations by amending RSA 632-A:7 to provide that "[i]n cases where the victim was under the age of 18 when the alleged sexual assault offense occurred, the statute of limitations shall not begin to run until the victim reaches the age of 18." RSA 632-A:7, I (Supp. 1986) (1986 amendment). Effective April 27, 1990, the legislature repealed RSA 632-A:7 altogether and amended RSA 625:8 to provide that "where the victim was under 18 years of age when the alleged offense occurred, [prosecutions for offenses under RSA chapter 632-A may be commenced] within 22 years of the victim's eighteenth birthday." RSA 625:8, III(d) (Supp. 1993) (1990 amendment). At no time had the statute of limitations applicable to the defendant's alleged crimes expired before the enactment of a longer statute.

The defendant argues that the only applicable statute of limitations was the original six-year statute of limitations in RSA 625:8 (1986). He contends that his substantive right not to be prosecuted beyond the original six-year time frame of the statute vested upon the expiration of those six years. He concludes that retrospective application of the 1986 and 1990 amendments is prohibited by the *ex post facto* clauses of the State and Federal Constitutions, N.H. CONST. pt. I, art. 23; U.S. CONST. art. I, § 10, and deprives him of the due process protection against overly stale criminal charges. *See* N.H. CONST. pt. I, art. 15; U.S. CONST. amend. XIV, § 1. We disagree.

 As we recently ruled in a case interpreting these amendments, "until a criminal statute of limitations has run, it is a mere regulation of the remedy and we will presume that an extension of the limitations period applies retrospectively." *State v. Hamel*, 138 N.H. 392, 395, — A.2d —, — (1994). The presence of explicit retrospective language in the 1990 amendment, *see* Laws 1990, 213:4, but not in the 1986 amendment, does not compel a different result. *See id.* at 396, — A.2d at —. "After the limitations period has run, however, it is a vested defense of right that cannot be taken away by legislative enactment." *Id.* at 395, — A.2d at —. Because no statute of limitations applicable to the defendant's alleged crimes ever expired prior to the enactment of a longer statute, however, the defendant's substantive right not to be prosecuted beyond the six-year time frame of the original statute never vested. *See id.* at 395, — A.2d at —; *State v. O'Neill*, 796 P.2d 121, 123–24 (Idaho 1990). "This analysis precludes any possibility that retrospective application of the [statute of limitations amendments] violates the *ex post facto* prohibitions of the State or Federal Constitutions." *State v. Hamel*, 138 N.H. at 396, — A.2d at —; *see also United States v. Madia*, 955 F.2d 538, 540 (8th Cir. 1992).

 The defendant also claims that retrospective application of the 1986 and 1990 amendments denies his right to due process under both the State and Federal Constitutions because, over time, witnesses, documents, and other potentially exculpatory evidence becomes unavailable or unhelpful. We have held, however, that in order to trigger a State constitutional analysis, the defendant must raise the State constitutional issue below and his brief must specifically invoke a provision of the State Constitution. *State v. Dellorfano*, 128 N.H. 628, 632, 517 A.2d 1163, 1166 (1986).

The only New Hampshire case cited by the defendant below in support of his due process argument, *State v. Varagianis*, 128 N.H.

226, 512 A.2d 1117 (1986), was decided on federal constitutional grounds. *Id.* at 228, 512 A.2d at 1119. Thus, "the defendant has failed to meet his procedural burden of properly raising a State constitutional issue," *State v. Ramos*, 131 N.H. 276, 282, 553 A.2d 275, 279 (1988), and therefore "we address only his federal claim," *id.*

■ "In interpreting federal due process requirements in this context, we have held that the applicable statute of limitations for an offense provides the primary guarantee against bringing overly stale criminal charges." *Id.* (quotations omitted). As we have already noted, the defendant in this case was arrested and indicted well within the applicable statute of limitations. *See* RSA 625:8, III(d) (Supp. 1993).

■ The State's delay in bringing criminal charges against a defendant may still result in a denial of due process if the defendant first demonstrates that actual prejudice resulted from the delay. *See State v. Varagianis*, 128 N.H. at 228, 512 A.2d at 1119. The trial court must then balance the resulting prejudice against the reasonableness of the delay. *Id.*

The record supplied to us reflects that the defendant failed to demonstrate that retrospective application of the statute of limitations resulted in actual prejudice to him. In his motions to dismiss the case at the trial level, and in his brief to this court, the defendant merely speculates about the potential harm to future defendants that may result from prosecutions initiated many years after the alleged crimes were committed. These broad generalities fail to provide specific evidence of actual prejudice contemplated by the test outlined above. *See, e.g., State v. Weeks*, 137 N.H. 687, 697–98, 635 A.2d 439, 446 (1993); *State v. Ramos*, 131 N.H. at 282–83, 553 A.2d at 279; *State v. Varagianis*, 128 N.H. at 228–29, 512 A.2d at 1119.

■ The defendant next argues that the State failed to prove that he committed the alleged assaults both within the statute of limitations and prior to the victim's thirteenth birthday. *See* RSA 632-A:2, II (variant of aggravated felonious sexual assault requiring that victim be under the age of thirteen). "In determining the sufficiency of evidence, we view the evidence in the light most favorable to the State, with all reasonable inferences drawn therefrom. The defendant bears the burden of showing that no rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Hunter*, 132 N.H. 556, 561, 567 A.2d 564, 567 (1989) (citation omitted). The record contains ample evidence that would, when considered in the light most favorable to the State, enable a rational trier of fact to

514

conclude that the defendant's crimes occurred between April 11, 1981, and April 10, 1986, both within the statute of limitations and before the victim's thirteenth birthday. Although the victim expressed uncertainty on cross-examination as to the dates of the assaults, the transcript reveals that she expressed uncertainty only as to the dates on which "some of" the assaults occurred. At no time did the victim waver from her testimony that the various types of assaults alleged in the indictments did in fact occur at least once during the relevant time frames. The jury is free to accept or reject the testimony of a witness in whole or in part. *State v. Sands*, 123 N.H. 570, 590, 467 A.2d 202, 214 (1983). We therefore conclude that a rational trier of fact could have found guilt beyond a reasonable doubt.

The defendant next maintains that the State's introduction of the victim's prior consistent statements violated New Hampshire Rule of Evidence 801(d)(1)(B). The statements consisted of portions of two interviews of the victim that were conducted by the Laconia Police Department in September 1990, and by the Belknap County Sheriff's Department in December 1991. The defendant attempted to demonstrate that the victim's testimony regarding the frequency of the defendant's assaults conflicted with the estimates that she had given the two officers. The State then sought to rehabilitate the victim by calling the officers who conducted the interviews to testify to portions of the two statements that demonstrated consistency with the victim's testimony. The court allowed this testimony, over the defendant's objection, for the limited purpose of evaluating the victim's credibility.

By arguing a violation of Rule 801(d)(1)(B), the defendant cloaks the common law rehabilitative use of a prior consistent statement in the guise of a substantive, evidentiary rebuttal to "an express or implied charge of recent fabrication or improper influence or motive." N.H. R. Ev. 801(d)(1)(B). We do not agree with this analytical framework. Here, the consistent statements were not offered by the State for their truth, but only to provide the jury with a broader context from which to evaluate the victim's credibility after the defendant had used inconsistent portions of her prior statements to impeach her. That the defense also intended for the inconsistent portions of the statements to contribute to its theory of recent fabrication or motive does not preclude the State from introducing a more complete version of those very statements for purely rehabilitative purposes, even if the statements do not predate the motive to fabricate. *Cf. State v. McSheehan*, 137 N.H. 180, 184–85, 624 A.2d 560, 562 (1993) (if statement introduced as substantive evidence to rebut charge of recent fabrication, it must predate motive to fabricate).

■ The admissibility of prior consistent statements for rehabilitative purposes "is a matter wholly within the discretion of the trial court. We will not overturn the trial court's decision unless we find an abuse of discretion." *State v. Morales*, 136 N.H. 616, 619, 620 A.2d 1034, 1036 (1993) (citation and quotation omitted). Here, the trial judge carefully sifted through the statements, permitting reference only to those portions reasonably necessary to rehabilitate the witness, and issued an unambiguous limiting instruction "to explain to the jury the limited, rehabilitative purpose of the testimony." *State v. Huard*, 138 N.H. 256, 261, 638 A.2d 787, 790–91 (1994). The trial court's actions regarding the State's use of the statements can in no way be characterized as an abuse of discretion, as each of those actions protected the defendant from the possibility of unfair prejudice.

Finally, the defendant argues that the trial court abused its discretion by allowing the State to make two separate references to other bad acts of the defendant, and that these references warranted the declaration of a mistrial. We first address the prosecutor's remark during her opening statement regarding post-offense behavior, and then turn to the victim's testimonial reference to other bad acts of the defendant.

Before trial, the State agreed not to seek to introduce any evidence of the defendant's sexual assaults upon the victim after her thirteenth birthday. This agreement was incorporated into the trial court's pretrial ruling on the defendant's motion *in limine*. Nevertheless, in her opening statement, the prosecutor declared: "Between [the ages of] 8 and 15 the defendant had . . . threatened [the victim] concerning what could happen to her family if she did not continue to have sex with him." At this point, defense counsel objected and requested a mistrial. The court denied this request, but instructed the prosecutor to make "very clear to this jury . . . the time that . . . the alleged offenses took place." The prosecutor then resumed her opening statement, asserting:

> "[The victim] will tell you . . . that she waited until she was 15 [to tell her mother about the abuse] because between the ages of 8 and 13, *when these events occurred*, the defendant had threatened her, her family. . . . She was afraid of him and kept quiet even two years beyond the last act, but at 15 again told her mother."

(Emphasis added.) At the conclusion of the opening statements, the trial court gave the jury the following instruction:

"What you have heard thus far is not evidence. These are opening statements, and you are not to consider this as evidence. This has been an introduction by both the State and the defense to their cases. This is not evidence, and you're not to consider it as such."

The court then reaffirmed its denial of the defendant's motion for a mistrial, finding

"that the statement made by the State was not so prejudicial as to in any way infringe on the defendant's rights to have a fair trial in this case. . . . [T]he State properly clarified what had been referenced in the statement which the defense found objectionable."

■■■■ The standard of review of the denial of a motion for a mistrial is whether the trial court abused its discretion. *State v. Lemire*, 130 N.H. 552, 554, 543 A.2d 425, 426 (1988). "The basis for granting a mistrial is the existence of some circumstance[] which indicates that justice may not be done if the trial continues to verdict." *State v. Booton*, 114 N.H. 750, 757, 329 A.2d 376, 382 (1974), *cert. denied*, 421 U.S. 919 (1975). "To justify a mistrial, remarks or the conduct must be more than merely inadmissible; they must constitute an irreparable injustice that cannot be cured by jury instructions." *State v. Sammataro*, 135 N.H. 579, 582, 607 A.2d 135, 136 (1992) (quotation omitted). Because the trial court is in the best position to gauge prejudicial impact, it has broad discretion to determine whether a mistrial or other remedial action is necessary. *See State v. Ellison*, 135 N.H. 1, 4, 599 A.2d 477, 480 (1991). Remedial action includes curative jury instructions, and the jury is presumed to follow such instructions. *Lemire*, 130 N.H. at 555, 543 A.2d at 426–27.

■■■■ The defendant seeks to equate the prosecutor's errant remark in her opening statement with the introduction of impermissible *evidence* in the form of witness testimony. *See, e.g., State v. Woodbury*, 124 N.H. 218, 469 A.2d 1302 (1983); *State v. LaBranche*, 118 N.H. 176, 385 A.2d 108 (1978). An opening statement is not evidence, however. *Booton*, 114 N.H. at 758, 329 A.2d at 382. As we have already noted, immediately following the opening statements, the trial court properly instructed the jury that what it had heard was "not evidence." The prosecutor's clarification in her opening statement and the trial court's subsequent curative instruction ensured that the defendant was not prejudiced by the prosecutor's earlier remark. Accordingly, the trial court did not abuse its discretion in denying the defendant's motion for a mistrial regarding the prosecutor's opening statement.

■ At trial, the State offered to prove that the defendant had terrorized the victim by telling her that he had killed her pets and that she would suffer a similar fate if she did not submit to sex with him, or if she reported his assaults. The defendant sought to exclude this evidence as an improper reference to other bad acts. *See* N.H. R. Ev. 404(b). The trial court ultimately permitted the State to elicit testimony that the animals had died and that the defendant had seized upon the occasion of those deaths to threaten the victim, but refused to allow the State to show that the defendant had taken credit for killing the animals. Nevertheless, on direct examination of the victim, the following exchange took place:

> "[Prosecutor:] What did the defendant say to you concerning the dog?
>
> [Witness:] He told me the dog died, *that he had killed it*, and that it would—
>
> [Defense counsel:] Objection. Approach.
>
> THE COURT: Approach."

(Emphasis added.) A bench conference immediately ensued, during which the trial court denied the defendant's motion for a mistrial, and after which the trial court issued the following curative instruction: "[D]isregard the prior answer of this witness. And you are not to in any way draw any inferences whatsoever from that answer or even consider it in any way as evidence in this trial."

■ The defendant first contends that the trial court should have required the State to establish these threats without referring to the victim's pets at all. We disagree. It would have been impossible as a practical matter for the State to introduce evidence of the victim's fear without also introducing some evidence of the basis for that fear. The defendant's threats were a material part of the entire course of conduct surrounding the commission of the alleged crimes. By incorporating statements about his past misdeeds into a criminal threat, the defendant is not shielded from the use of the substance of that threat in a subsequent prosecution. *See, e.g., Commonwealth v. Claypool*, 495 A.2d 176, 179 (Pa. 1985); *Oates v. State*, 437 So. 2d 441, 442 (Miss. 1983). As the references in these threats to the death of the victim's pets were not offered for their truth, but rather for the limited purpose of substantiating the victim's fear and explaining her delay in reporting the abuse, the trial court was well within its discretion to allow their introduction. *See generally State v. Cochran*, 132 N.H. 670, 672, 569 A.2d 756, 757 (1990). We note that the record

does not reveal that the defendant requested an instruction so limiting the use of these references by the jury. *See State v. Bruce*, 132 N.H. 465, 470, 566 A.2d 1144, 1148 (1989).

 The defendant also argues that even the mere suggestion that the defendant abused the animals was barred by New Hampshire Rule of Evidence 404(b). Rule 404(b) provides:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Ordinarily, prior to the admission of such evidence, the following three determinations must be made: (1) that the evidence is relevant for a purpose other than character or disposition; (2) that there is clear proof that the defendant committed the prior offenses; and (3) that the prejudice to the defendant does not substantially outweigh the probative value of the evidence. *State v. Gruber*, 132 N.H. 83, 88, 562 A.2d 156, 159 (1989); *State v. Trainor*, 130 N.H. 371, 374–75, 540 A.2d 1236, 1238–39 (1988). However, Rule of Evidence 404(b) and its requisite test are not applicable here because evidence establishing the very threat that coerced the victim to comply with the defendant's demands is not evidence of "other crimes, wrongs, or acts." *Cf. State v. Kulikowski*, 132 N.H. 281, 287, 564 A.2d 439, 443 (1989). The appropriate test for admissibility in this instance, therefore, is contained in Rule of Evidence 403, which permits the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice." N.H. R. Ev. 403. On appeal, the defendant must show that the trial court abused its discretion, that is, that the trial court's decision to admit the evidence was "clearly untenable or unreasonable to the prejudice of the defendant's case." *State v. Trainor*, 130 N.H. at 375, 540 A.2d at 1239 (quotation omitted).

The defendant contends that because the State could have adequately established the threats without any reference to the victim's pets, the slight probative value of such a reference was substantially outweighed by the prejudicial inference that the defendant killed the victim's pets. As we have already noted, however, evidence regarding the victim's pets was introduced to show the basis for the victim's

fear and tended to explain her delay in reporting what the defendant had done to her. The probative value of the reference to the victim's pets, therefore, was great. Furthermore, the defendant did not request a limiting instruction that could have reduced or eliminated any prejudicial inference that the defendant killed the victim's pets. *See* N.H. R. Ev. 105. In the absence of such a request, *see State v. Bruce*, 132 N.H. at 470, 566 A.2d at 1148, we cannot conclude that the admission of the evidence was untenable or unreasonable to the prejudice of the defendant's case.

The defendant finally asserts that the victim's inappropriate remark on the witness stand constituted grounds for a mistrial. As noted earlier, remarks made by the victim "must constitute an irreparable injustice that cannot be cured by jury instructions." *State v. Sammataro*, 135 N.H. at 582, 607 A.2d at 136 (quotation omitted). Because the issue is not before us, we do not comment on the admissibility of the victim's statement that the defendant told her that he had killed her dog. We hold, however, that the defendant has failed to show that he was irreparably harmed by the victim's remark, especially in light of our presumption that the jury followed the trial court's curative instruction. *Lemire*, 130 N.H. at 555, 543 A.2d at 426–27. The trial court thus did not abuse its discretion in denying the defendant's motion for a mistrial. Accordingly, we affirm the defendant's convictions.

*Affirmed.*

All concurred.