Hillsborough,  } No. 3768.
Dec. 7, 1948. }

FRANK TWARDOSKY, *p. p. a.* JOSEPH TWARDOSKY.

*v.*

NEW ENGLAND TELEPHONE & TELEGRAPH COMPANY.

SAME *v.* PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE.

JOSEPH TWARDOSKY *v.* NEW ENGLAND TELEPHONE & TELEGRAPH COMPANY.

JOSEPH TWARDOSKY *v.* PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE.

*Robert E. Earley, Paul J. Doyle* and *Charles J. Flynn,* and *Elwin L. Page* on the brief (*Mr. Flynn* and *Mr. Earley* orally), for the plaintiffs.

*Hughes & Burns* and *Donald R. Bryant* (*Mr. Bryant* orally), for the defendant New England Telephone & Telegraph Company.

*Sulloway, Piper, Jones, Hollis & Godfrey* (*Mr. Piper* orally), for the defendant Public Service Company of New Hampshire.

BRANCH, C. J. The defendants take the position that their motions for directed verdicts should have been granted for the following reasons: "1. There was no evidence of any negligence on the part of the defendants in maintaining the pole in question as and where it did; 2, There was no evidence to show any contact between the truck and the pole to cause the accident; 3, There was no evidence to show that the plaintiffs suffered any damage as the result of any contact."

It is difficult to maintain these positions in the face of our decision in the case of *Hayes* v. *Company*, 86 N. H. 486. It was there pointed out (*p.* 496) that the liability for improperly placing a pole in the highway "arises out of the neglect of the precautions required by the conditions of public travel" and exists because the grant of permission to erect poles in streets and highways is made, either expressly or by implication, subject to the requirements of the public safety in the use of the streets. Reference was also made in that case to the decision in *Davis* v. *Hill*, 41 N. H. 329, in which it was held that objects

"without the limits of the road but in the general direction of the travel thereon, may properly be alleged as a defect in the highway itself." *Id.*, 334. As in *Cogswell* v. *Lexington*, 4 Cush. 307, where the defendant was held liable for an injury happening to a traveler in consequence of driving his wagon against a post which stood without the limits of the highway but within the line thereof and within the general course and direction of the travel thereon and rendering the traveling dangerous.

In the present case the Court submitted to the jury as the first question for them to consider: "Did the defendant companies place the pole in a position that provided a reasonably safe, free, and convenient passage for public travel on that highway?" As guides to their determination of this question, the jury had a view of the pole in question, and also had before them various photographs showing the pole and its location. On this evidence alone, a finding that the pole constituted an obstruction to public travel as above defined, might well have been made. Two of the photographs above mentioned show the course of the defendants' power line beyond the point of collision toward the Twardosky house and indicate that the other poles, particularly the one next to the pole in question, were placed much farther outside the limits of the traveled way than the pole here involved.

The jury also had before it the testimony of the road agent of the town of Merrimack which was in part as follows: "Q. During all the time you have been traveling by that pole you never had any trouble getting by at all? A. We do in snow plowing. Q. That is because of the way the snow piles up? A. We have quite a few of those poles where it piles up. . . . Q. But as far as traveling on the road in the summer time, you haven't had the slightest trouble? A. There is a blind corner there, and when you make the corner you face the pole. . . . It's a bad turn. If you meet anybody you are going to throw yourself out." In short, there was evidence that this pole stood on a bad turn much nearer to the traveled portion of the highway than the next pole to the north, in a place where travelers rounding the turn would have the pole directly in front of them, which was exactly the situation that confronted the driver of the truck. His testimony was as follows: "Q. And when you were coming across the road, where was that pole in respect to the path of your automobile? A. It was right in front of me. Q. What did you do? A. Tried to miss it." The question whether the pole was so placed as to cause an obstruction to public travel was not one upon which expert testimony was necessary

but one upon which the judgment of the jury was sufficient. As before indicated, the question was properly submitted to them by the Trial Court and the evidence furnished an adequate basis for their decision.

The second claim of the defendants is that "there was no evidence to show any contact between the truck and the pole." Upon examination, this claim appears to be, not that evidence upon this point was lacking, but that the jury ought not to have believed such evidence as there was. The plaintiff Joseph and his wife both testified that when they examined the pole on the day following the accident, they observed fresh marks upon it "where it hit and dug a little off where it hit." They also observed tire marks close to the pole which might well have been made by the truck as it passed. There was also evidence that the side boards on the right hand side of the truck were broken and fell off shortly after the truck passed the pole and that the body of the truck came completely off and was found some fifty feet beyond the supposed point of collision. It is true that the three men who were riding in the cab of the truck testified that it did not hit the pole at all and that the body had been loose and swaying before it finally slid off. In this state of the proof it was clearly for the jury to determine whether or not the truck hit the pole.

If the jury found, as they apparently did, that the truck hit the pole, defendants' position that there was no evidence to show that the plaintiffs suffered any damage as the result of any contact, requires little notice. It is evident that the plaintiff Frank was injured when the truck body came off and landed beside the road. If the body was loosened or knocked from the truck as a result of a collision with the pole, this contention of the defendants comes to nothing.

After the evidence had been closed, the plaintiffs filed a motion which reads, in part, as follows: "Now comes the plaintiffs in the above entitled cases and respectfully requests the court to permit the plaintiffs to reopen and recall witness Dr. Raymond H. Marcotte to give testimony as to the permanency of the plaintiff Frank Twardosky's injuries. The plaintiffs set forth as reasons thereof the following facts: 1. That at the time Dr. Marcotte, the consultant physician testified, plaintiffs' attorneys were reasonably assured that Dr. Norman Crisp, the attending physician, would be available for testifying and that deputy sheriff Spillane had been given a subpoena to insure the attendance of Dr. Norman Crisp. 2. That Frank Twardosky is suffering from major ailments which are permanent and due to the accident. 3. That through inadvertence, mistake and misfortune,

Dr. Marcotte was not asked to testify to this matter. 4. That by reason of the urgency and press of the trial this fact was not called to the attention of the plaintiffs until too late to rectify the matter and Deputy Sheriff informed them that Dr. Norman Crisp was not available." This motion was denied and the plaintiffs excepted. In explanation of his order the Court said: "We can't keep opening these things up this way. I don't feel that justice requires that the case should be reopened under all the circumstances as I have observed them during the course of the trial. The motion is denied."

The case of *Gerrish* v. *Whitfield*, 72 N. H. 222, 223, seems to be decisive upon the point raised by this exception. It was there said: "Whether, under the circumstances of the case, justice required that the rule should be relaxed in her favor is not a question of law and the exception to the ruling of the Superior Court presents nothing for decision by this court."

It is argued on behalf of the plaintiff, however, that "the record discloses the fact that the objection of defendants' counsel was based solely upon the conduct and attitude of plaintiffs' counsel during the trial. It further shows that the finding of the Court that justice did not require the reopening of the case, was based solely upon that attitude and conduct as the Court saw them." It is further argued that the infant plaintiff suffered an injustice in that he was denied full consideration of his case because of the conduct of his counsel for which he was not responsible. This argument must be rejected because it is unsound both in fact and in law. The record is studded with instances of conduct on the part of plaintiffs' counsel which may well have annoyed the Presiding Justice, but there is nothing in the record which compels a conclusion that his action in denying the motion to reopen was motivated by any feeling of resentment against plaintiffs' counsel. Furthermore, the claim that the infant plaintiff was not bound by the acts of his counsel is contrary to the law long established in this jurisdiction. *Beliveau* v. *Amoskeag Mfg. Co.*, 68 N. H. 225, 228. It was there said: "The infant, through his representative, is bound by the attorney's acts within the ordinary scope of his authority the same as an adult would be." *Merchants Mut. &c. Co.* v. *Kiley*, 92 N. H. 323. The plaintiffs' exception is accordingly overruled.

James R. Lloyd, a witness called by the defendants, was one of the passengers in the cab of the truck. At the time of the trial he was living in Wilmington, Delaware. After he had testified to the circumstances of the accident, he was cross-examined by counsel for the

plaintiffs as follows: "Q. Since you have been in Nashua have you talked with anyone from the telephone company or the Public Service Company about this case? A. Yes. Q. You have been over it with them? A. Yes. Q. And you have tried to reconstruct what happened there? A. Yes. Q. And they tried to help you out? A. They just went over my statement. Q. They tried to help you remember what happened? A. They asked me if the statement I made to Mr. Reed was true. Q. And did they also try to reason out how it must have happened down there? A. Yes." Upon re-direct examination the witness then testified as follows: "Q. You said, Mr. Lloyd, that Mr. Reed interviewed you in Wilmington, Delaware when he was down there to see Mike Lawruk? A. That is right. Q. And did he take a statement from you at the time? A. Yes. Q. Did you sign the statement? A. Yes." The defendants then offered the statement in evidence, and the following proceedings took place: *"The Court:* For what purpose do you offer the statement? *Mr. Burns:* On the ground that Mr. Doyle has tried to infer that this man has changed his testimony since he came to New Hampshire. *Mr. Doyle:* I never meant any such inference. *The Court:* There was a very definite inference in your examination. The objection is overruled." The statement was then admitted and the plaintiffs excepted.

This exception exemplifies the distinction noted by Professor Wigmore (4 Wig. Ev., 3d. *ed., s.* 1126) between consistent statements offered for the purpose of rehabilitating the credit of a witness after his testimony has been impeached by inconsistent statements, and such prior statements offered to show that there have been no prior inconsistent statements. The courts differ as to the admissibility of prior statements for the first purpose, but, as Professor Wigmore points out, they are clearly admissible for the second. The language of plaintiffs' counsel was susceptible of the interpretation given to it by the Presiding Judge, as follows: "There was a very definite inference in your examination" that this man has changed his testimony since he came to New Hampshire. The statement was properly admitted as a fair means of rehabilitating the credit of a witness which had been attacked upon cross-examination. The cases of *Valley* v. *Railroad*, 68 N. H. 546, and *Daniels* v. *Barker*, 89 N. H. 416, cited by the defendants, while not strictly in point, are entirely consistent with the conclusion here reached.

*Exceptions overruled.*

JOHNSTON and DUNCAN, JJ., dissented in part: the others concurred.

DUNCAN, J. *dissenting in part:* I concur in the views of the majority except as they relate to the denial of the minor plaintiff's motion to reopen. The motion was addressed to the discretion of the Trial Court, and presented the question of what justice required. It was so considered by the Court. What justice requires is a question of fact, the decision of which, if supported by the record, is not subject to revision upon appeal. *Jaques* v. *Chandler*, 73 N. H. 376, 381; *Colburn* v. *Groton*, 66 N. H. 151, 153; *Dunklee* v. *Prior*, 80 N. H. 270. In this case however the decision is not supported by the record. The evidence which the plaintiff sought leave to introduce concerned a vital issue, as to which no evidence had previously been offered, although it had appeared without dispute that examination shortly before trial showed a partial paralysis of the boy's face and no hearing in his right ear. Had evidence that this condition was permanent been seasonably presented, the plaintiff would have been entitled as a matter of right to have it received. In view of its importance, it should have been received whenever offered at the trial, "unless offered at so late a time as to give the proponent an unfair advantage." *Steinfield* v. *Monadnock Mills*, 81 N. H. 152, 155. See also, *Stone* v. *Boscawen Mills*, 71 N. H. 288; 53 Am. Jur. 110.

The record contains nothing to show that any unfair advantage would have resulted from reopening the trial. No claim is made that the order of denial rested upon any consideration not disclosed by the record. The case differs from that of *Vidal* v. *Errol*, 86 N. H. 585, where the motion before the court was determined after informal and unrecorded proceedings. Here there is no occasion to indulge in presumptions. If the delay in offering the testimony was attributable to mistake or inefficiency on the part of counsel for the plaintiff, nevertheless, as an infant, the plaintiff was entitled to have his interests safeguarded by the Court (see *Leazar* v. *Cota*, 43 N. H. 81, 82), so far as possible in consistence with justice to the defendants. 43 C. J. S. 271, *s.* 105. Since the record does not support the finding that justice required denial of the motion, the verdict in the action on behalf of the minor should be set aside, and opportunity afforded to establish the full extent of the damage.

JOHNSTON, J., concurred in this opinion.