Strafford
No. 86-203

THE STATE OF NEW HAMPSHIRE

v.

GARY S. DEAN

October 9, 1987

*Stephen E. Merrill,* attorney general (*William H. Lyons,* assistant attorney general, on the brief and orally), for the State.

*James E. Duggan,* appellate defender, of Concord, by brief for the defendant.

*Gary S. Dean,* by brief and orally, *pro se.*

THAYER, J.   The defendant appeals his conviction for aggravated felonious sexual assault. RSA 632-A:2 (Supp. 1986). He contends that the Trial Court (*O'Neil,* J.) improperly denied him the opportunity to cross-examine the prosecutrix concerning alleged inconsistent statements she had made to an examining nurse regarding her prior sexual activities. The defendant further challenges the decision of the trial court to admit into evidence a thirty-three-page statement given to the police by the prosecutrix. He also argues that the trial court improperly permitted the jury foreman to remain as a juror after it was learned that the foreman was the uncle of a witness. Finally, the defendant challenges the decision of the trial court imposing an extended term of imprisonment, arguing that there was insufficient evidence to support the statutorily required finding of an infliction of serious bodily injury, *see* RSA 651:6. We affirm.

Sometime after midnight on July 12, 1985, the victim stopped at a gas station in Concord to purchase a soft drink. When she returned to her car she found the defendant seated inside. Believing that the defendant was carrying a knife, the victim obeyed the defendant's demand to drive him out of Concord. When she stopped the car on the way to her home in Loudon and told the defendant he would have to get out, he refused, and grabbed her. He placed

a knife to her face and said, "I'm going to get a ride, aren't I?" The victim then drove toward Pittsfield. After she drove around a curve too quickly, Dean ordered her to stop the car. He took her place behind the wheel.

Dean drove the victim down an unpaved, wooded back road, and later turned the car onto a second dirt road, He stopped the car in a secluded area. When the victim asked him if he was ever going to let her go, he replied, "not until I have some fun." He ordered her into the back seat and told her to undress. When she said, "Don't expect me to kiss you," the defendant replied, "then don't expect me to be nice." The defendant pinched the victim's breast and choked her by twisting her necklace around her throat. The defendant then forced the victim to submit to intercourse after which he struck her in the vaginal area with his fist. When the victim screamed, the defendant told her to keep her mouth shut. When the victim asked him "why me?", the defendant replied, "Well, let's just say you were in the wrong place at the wrong time."

Dean continued to pound the victim in the vaginal area. He rummaged through her handbag and found several items which he inserted into the victim's vagina. He thrust a hairbrush with bristles about an eighth of an inch long into her vagina, then abruptly ripped it out.

Dean continued to beat the victim in the groin area and after tying her hands behind her back, forced her to perform fellatio on him and to further submit to intercourse. With his cigarette he burnt her vagina. Telling the victim, "You had better please me because if you don't, I'm going to kill you," Dean forced the victim to submit to further acts of vaginal and anal sex. He thereafter repeatedly beat her in the vaginal area and at one point used his fingers to twist her labia. When the victim asked the defendant why he was hurting her, Dean replied, "why not?"

Eventually, the defendant gave the victim a blanket and permitted her to sleep. In the morning, while Dean was changing a tire on the car, a jogger ran by with her dog. Dean warned the victim that he would kill her if she said anything to the jogger. After that, Dean gave the victim directions to Pittsfield and took ten dollars from her purse. He remarked, "I might as well add robbery to the charges." Telling her not to look back, Dean left the car and went into the woods.

The victim drove to a house in Northwood and called her father. Police and an ambulance responded shortly afterwards, and the ambulance took her to Concord Hospital.

The hospital performed the rape protocol procedure on the victim. During the procedure she was upset, trembling, and very shaky. She cried during the exam. The examining physician noticed bruises on the victim's arms and legs, a great deal of swelling and bruising to her genitalia, and a laceration to her cervix. The victim's rectum was tender. Nonmotile sperm were found in her vagina. An analysis of her hairbrush revealed the presence of epithelial cells, which line the mucous membrane of the vagina, on the bristles and handle.

Gary Dean became a suspect on July 14, 1985. Dean's file fingerprints were matched with a print lifted from the car, and the victim identified Dean as her assailant from a photographic lineup. Dean was arrested at his home on July 15, 1985, and charged with aggravated felonious sexual assault and robbery. At trial, he admitted to having sex with the victim, but testified that she had initiated a conversation about sex and had consented to sexual intercourse. Although the defendant admitted striking her, he testified that this occurred because she had bitten his testicles.

On cross-examination of the victim, defense counsel elicited information from her concerning a few dates she had had with a man. She volunteered that the relationship was "nothing serious." When defense counsel went on to ask about other dates the victim had had with other men, the State objected. Out of the jury's presence, defense counsel offered evidence that a Concord Hospital medical report reflected a statement by the victim, to an examining nurse, that she had sex on July 10, two days before she was raped. Citing our decision in State v. Howard, 121 N.H. 53, 426 A.2d 457 (1981), the defendant sought to examine the victim concerning her memory of the statement on the ground that the inquiry would highlight her allegedly inconsistent statements. Subsequently, the trial court ordered an in camera voir dire, in which the defendant was permitted to question the victim out of the presence of the jury regarding her prior sexual activities and her statements to the Concord Hospital nurse. She admitted that she had had sex before her rape by the defendant, but was unable to remember her conversation with the nurse at Concord Hospital, or whether she had had sex on the morning of July 10, 1985.

On the basis of the victim's testimony, the trial court held that the probative value of her testimony regarding her prior sexual activities was outweighed by the potential for prejudice to her. Accordingly, the court held that the State rape shield law, RSA 632-A:6, prohibited the defense from cross-examining the victim on the subject of her prior sexual activity. The defendant was found

guilty and sentenced to ten to thirty years in the New Hampshire State Prison on the aggravated felonious sexual assault indictment and 7 1/2 to 15 years in the State Prison on the robbery indictment. In his appeal to this court, the defendant appeared orally *pro se,* and in the course of argument made certain statements damaging to his case.

■ We first address the defendant's contention that the trial court erred in prohibiting the cross-examination of the victim on the details of her prior sexual activity and on statements she made concerning those activities. In this State, inquiry into the prior consensual sexual activities of victims of aggravated felonious sexual assault is generally prohibited. RSA 632-A:6; N.H. R. Ev. 412. The legislative history of RSA 632-A:6 indicates that the statute was designed to spare the rape victim testifying at trial from unnecessary embarrassment, prejudice, and harassment. *State v. LaClair,* 121 N.H. 743, 745, 433 A.2d 1326, 1328 (1981). Nonetheless, due process and the right of confrontation require the admission of such evidence when its probative value in the context of the case outweighs its prejudicial effect. N.H. R. Ev. 412(b)(2); *State v. Goulet,* 129 N.H. 348, 529 A.2d 879 (1987); *State v. Howard,* 121 N.H. 53, 59, 426 A.2d 457, 461 (1981).

> "While *Howard* recognizes that the State and National Constitutions may require admission of evidence of a victim's prior sexual activity, admissibility is not automatic simply because the evidence is relevant on credibility. The rape shield law authorizes a victim to claim a privilege of personal privacy, *see State v. Miskell,* 122 N.H. 842, 845, 451 A.2d 383, 385 (1982), which cannot be defeated without a defendant's offer to prove facts that could justify its invasion, *id.* at 846, 451 A.2d at 385–86; *State v. Baker,* 127 N.H. 801, 804, 508 A.2d 1059, 1062 (1986), followed by a hearing to establish those facts and to evaluate the strengths of the competing interests in privacy and effective confrontation. *State v. Howard supra.*"

*State v. Goulet,* 129 N.H. at 351, 529 A.2d at 881.

■ Under Rule 412(b) of the New Hampshire Rules of Evidence, the defendant carries the burden of establishing that due process requires the admission of evidence of prior consensual sexual activity between the victim and any person other than the defendant. At the hearing *in camera* on defendant's oral motion, the defense presented evidence consisting of: (1) the victim's

admission of having engaged in consensual sexual activities prior to the assault; (2) the victim's statement to the emergency room nurse admitting to her that the victim had sex on July 10, 1985; and (3) the testimony of the victim that she could not remember that portion of her statement to the nurse concerning her prior sexual activity and that she could not remember having had sex on July 10, 1985. The defense contended that when the victim's inability to recall certain facts at the *in camera voir dire* was contrasted with her statements at the hospital, an inconsistency resulted which bore "directly upon her credibility." Therefore, the defense argues, due process required that such inconsistencies be brought before the jury.

In his decision not to permit the evidence of the victim's prior consensual sexual activity, the trial judge properly pointed to the fact that the victim did not deny that she had told the nurse that she had had sex the day before she was raped. What she did say is that she did not remember that part of the conversation. Although the fact that she did not recall certain statements to the nurse might have affected her credibility, the trial court was justified in concluding that the probative value of such testimony was far outweighed by the prejudice that could have resulted to the victim. The court noted in support of its decision that the "purpose [of the proposed defense line of questioning] is to portray this victim before the jury as some sort of a masochistic tramp . . ."

■ After a review of the *in camera voir dire*, we too find that the defendant has provided insufficient evidence to justify permitting a jury to hear evidence of the victim's prior sexual activities. The defendant had every opportunity to cross-examine the victim concerning her ability to recall the details of the attack. The jury had a full opportunity to weigh her credibility on the issue of whether she voluntarily engaged in intercourse with the defendant. Evidence of the victim's inability to recall details concerning unrelated consensual sexual activities with a third person is scant evidence of the victim's ability accurately to recount being brutally raped by the defendant. The trial court's ruling was within its sound discretion, *State v. Shute*, 122 N.H. 498, 503, 446 A.2d 1162, 1165 (1982), and was therefore proper.

The defendant next contends that the admission into evidence of the victim's statement to the police was improper. On cross-examination, defense counsel attempted to impeach the credibility of the victim by highlighting distinctions between her testimony on the stand and her account to the police contained in a thirty-three-

page statement. *On re-direct examination* the prosecutor offered the statement into evidence as a prior consistent statement designed to rehabilitate the witness. Over defendant's objection, the trial court admitted the statement and issued a limiting instruction to the jury. The court instructed the jury to consider the statement only for its consistencies or inconsistencies with the victim's testimony, and not to consider the statement as substantive evidence. The defendant argues that he was prejudiced by the introduction of the statement because the jury might have considered it as the victim's testimony. We see no error in admitting the statement.

■■ The admissibility of a prior consistent statement to rehabilitate a witness whose credibility has been impeached by a prior inconsistent statement is an issue wholly within the discretion of the trial court. *Allstate Ins. Co. v. Chatigny*, 103 N.H. 81, 85, 166 A.2d 122, 125 (1960); *State v. Skillings*, 99 N.H. 427, 429, 113 A.2d 490, 491 (1955); *cf.* N.H. R. Ev. 801(d)(1)(B) (prior consistent statement admissible substantively to rebut express or implied charge of recent fabrication, improper influence, or motive). Here, the statement admitted was the same one used by the defendant to impeach the victim's credibility. The prosecutor offered it to show that the statement, as a whole, was consistent with her testimony, and that any inconsistencies were insignificant. The defendant's claim of prejudice is therefore unfounded, especially in light of the trial court's limiting instruction. The trial court did not abuse its discretion in admitting the statement.

The defendant next challenges the trial court's decision to permit the foreman of the jury and the alternate juror to remain after potential biases were exposed. During trial, juror Sprague, the alternate juror, met with the trial judge and told him that the defendant had been staring at her and made her nervous. After the judge reassured her that she was safe, juror Sprague confirmed that she could still render an impartial decision if called upon to do so. Shortly thereafter, juror Fall, the foreman, informed the judge that he was the uncle by marriage of a witness. The judge did not dismiss juror Fall, because juror Fall assured the judge that he could still give impartial consideration to the case.

The defendant contends that the trial court's failure to remove juror Sprague denied him his right to a fair trial. Although juror Sprague was never called upon to serve as a regular juror, the defendant maintains that her potential prejudice prevented him from challenging juror Fall. The alternative of replacing a prejudiced juror with a biased juror, the defendant argues, left him with a Hobson's choice.

■ This dilemma is more apparent than real. We disagree with defendant's assertion that juror Sprague should have been dismissed under *State v. Wellman*, 128 N.H. 340, 513 A.2d 944 (1986). The point is moot, however, since the defendant did not object at trial to juror Fall's remaining on the jury. Moreover, it is doubtful that an objection would have been sustained. Juror Fall was an uncle of a witness, and he assured the trial judge that he could give impartial consideration to the case. More importantly, after the alleged bias was exposed, the witness was called by the defense, so any potential for prejudice would work in favor of the defendant. Neither the facts contained in her testimony nor her credibility were contested by either party.

Finally, the defendant argues that there was insufficient evidence to support a finding of serious bodily injury to justify an extended term of imprisonment under RSA 651:6, I(d). The statute calls for an extended sentence if the court finds the defendant "manifested cruelty or depravity in inflicting death or serious bodily injury on the victim . . . ." *Id.* The defendant concedes that he manifested cruelty or depravity in inflicting the injuries, but contends that the injuries do not rise to the level of serious bodily injury as that term is defined in RSA 625:11, VI. We disagree and deny defendant's request for resentencing.

The defendant argues that despite the conclusion of the State's medical expert that the victim's injuries were "severe," the victim required only minimal medical attention and suffered no permanent or protracted loss of or impairment to the function of any part of her body. *See* RSA 625:11, VI. The facts, as revealed by the record and recounted in defendant's brief, present the numerous injuries suffered by the victim. Among other injuries, there was a "tremendous amount of swelling of the external genitalia . . . around the labia, with abrasions and with a large, large bruise, tenderness there also. . . . [T]here was a laceration on the cervix that apparently was caused by the bristles of the hairbrush." The cervix was "red and raw." There was tenderness in the womb and fallopian tubes. The rectal area was also "very tender." In addition to the medical expert's testimony, the victim testified that she asked the defendant to stop penetrating her because she was "hurting."

■ Although the medical expert did not draw the conclusion that the victim had suffered serious bodily injury, using the language of RSA 625:11, VI, it was entirely reasonable for the judge to conclude that there was severe impairment to the health and function of the victim's genital area. *Cf. State v. Plaut*, 124 N.H. 813, 814, 474 A.2d 587, 588 (1984) (testimony of victim as to injuries

752

and bodily impairment sufficient to support finding of serious bodily injury in second-degree assault conviction). The extended sentence imposed pursuant to RSA 651:6, I(d) was therefore proper, and the defendant's request for resentencing is denied.

*Affirmed.*

All concurred.