THE STATE OF NEW HAMPSHIRE

v.

ARCADIO MORALES

February 17, 1993

*John P. Arnold*, attorney general (*Tina L. Nadeau*, assistant attorney general, on the brief, and *John A. Stephen*, attorney, orally), for the State.

*W. Kirk Abbott, Jr.*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

HORTON, J. The defendant, Arcadio Morales, was convicted of robbery, RSA 636:1, after a jury trial in Superior Court (*Flynn*, J.). On appeal, the defendant contends that the trial court erred in admitting a witness's entire prior statement as rehabilitative evidence, where the witness had been impeached through reference to only portions of that statement. The defendant raises two issues. First, does New Hampshire Rule of Evidence 801(d)(1)(B), which addresses the substantive use of prior consistent statements, abrogate

traditional common law rules concerning the nonsubstantive use of such statements? Second, if prior consistent statements are admissible nonsubstantively, are the allowable portions of such statements limited to those that directly confront the impeachment evidence? We answer both questions in the negative and affirm.

On the evening of November 25, 1990, the victim, Charles Funk, attended a Christmas parade in Manchester with his girlfriend and her daughter. The victim left the parade before its conclusion to deliver a bag of clothes to a friend's home on Cedar Street in Manchester. The victim delivered the clothes and began walking to his girlfriend's home on Pine Street. While passing through a parking lot, the victim was assailed by the defendant and another man. While the defendant's companion held the victim from behind, the defendant grabbed him by the throat and held a knife to his face. After the victim was pulled to the ground, the defendant removed the victim's wrist watch, and then reached into the victim's pocket and took thirty-two dollars in cash. The defendant's companion departed immediately thereafter, but the defendant lingered for a moment and stood looking down at the victim. He then bent over the victim and, taking a cigarette that the victim still held between his fingers, said, "Thank you." The parking lot was illuminated by two street lamps, and the victim recognized the defendant, whom he had seen on several prior occasions in Manchester.

Soon after the defendant departed, the victim went to the Manchester Police Department and reported the robbery to Sergeant Philip Alexakos. The victim described the defendant, whom he referred to as "Carlos," as having a curl of hair that extended down his forehead. Based on this information, Sgt. Alexakos prepared a photo array containing a picture of the defendant. When the victim identified the defendant as one of his assailants, Sgt. Alexakos informed him that the defendant's name was not Carlos, but Arcadio Morales. The defendant was arrested two days later. At the time of his arrest, the defendant was carrying two knives, one of which was similar to the weapon described by the victim as having been used during the robbery.

At trial, the State called the victim as a witness. He testified that he had recognized the defendant during the robbery, and explained that the defendant's appearance had changed between the time of the robbery and trial. According to the victim, the defendant appeared to have gained weight, had shaved his mustache, and no longer had a curl of hair on his forehead. The victim also described the knife used during the robbery as similar to a switchblade, with a

thin, straight blade. He noted that the top of the knife's handle was metal or silver.

On cross-examination, the defendant's counsel, raising the defense of mistaken identification, questioned the victim about an earlier written statement he had given to a defense investigator, Richard Rosenshein, in which he described the defendant and the knife used during the robbery. The defendant's counsel asked the victim if he had told Rosenshein that the knife had a shiny handle. The victim first denied having described the knife handle as shiny, but after reviewing Rosenshein's report he agreed to having said that the portion of the knife handle visible during the attack had appeared shiny. The victim was also questioned about his prior descriptions of the defendant. The victim claimed that he had told Rosenshein about the defendant's curl of hair, but any mention of the curl was absent from the written statement. In addition, while the victim testified on cross-examination that the defendant wore a hat during the robbery, he had not mentioned a hat during his discussion with Sgt. Alexakos.

After the State rested, the defendant called two witnesses, the second of whom was the defense investigator, Richard Rosenshein. On direct examination, Rosenshein testified that during a meeting two months after the robbery, the victim had given a statement describing his assailants. The victim had then stated that he was robbed by two men, and that the man carrying the knife had short hair. The victim had not then mentioned the defendant's curl of hair. During a second meeting with Rosenshein two months later, the victim had reviewed and approved his earlier statement. On cross-examination, the State attempted to introduce the victim's entire two-page statement. The defendant objected on the grounds that the contents of the statement exceeded the scope of New Hampshire Rule of Evidence 801(d)(1)(B). According to the defendant, Rosenshein had been called to impeach the victim's description of the knife and the defendant, and under Rule 801(d)(1)(B), only the portions of the written statement that addressed these matters could be inquired into on cross-examination. The State, in response, argued that the entire statement was admissible "to assist the jury in evaluating the completeness of [the victim's] testimony." The trial court admitted the entire statement, but it instructed the jurors that the statement was offered not for its truth, but to assist them in evaluating the victim's credibility. Rosenshein was then permitted to summarize the victim's statement. Following Rosenshein's testimony, the trial court again instructed the jurors that they could use the victim's statement to

Rosenshein only to assess the victim's credibility. The defendant subsequently was convicted of robbery.

██ The defendant first contends that Rule 801(d)(1)(B) controlled the admissibility of the victim's statement to Rosenshein. The rule provides that prior statements which are consistent with a witness's in-court testimony, and which are offered to rebut an express or implied charge of recent fabrication or improper influence or motive, are not hearsay. Statements that meet these criteria are admitted as substantive evidence. *See State v. Dean*, 129 N.H. 744, 750, 533 A.2d 333, 337 (1987); N.H. R. Ev. 801(d)(1)(B) reporter's notes. The defendant contends that Rule 801(d)(1)(B) replaces common law rules concerning the nonsubstantive use of such statements. He points to Rule 100, which provides that "to the extent [the rules of evidence] alter or conflict with the common law, the rules shall govern." Nothing in Rule 801(d)(1)(B), however, purports to preclude the nonsubstantive, rehabilitative use of prior consistent statements. In fact, after adopting the rules of evidence, we upheld the nonsubstantive use of prior consistent statements. *See Dean*, 129 N.H. at 750, 533 A.2d at 337. Significantly, in *Dean*, we contrasted the rehabilitative use of prior consistent statements with the substantive use of such statements contemplated under Rule 801(d)(1)(B). *Id.*

██ Under common law rules still recognized by this court, the admissibility of a prior consistent statement, for use in rehabilitating a witness's credibility, is a matter "wholly within the discretion of the trial court." *Id.* (citing *Allstate Ins. Co. v. Chatigny*, 103 N.H. 81, 85, 166 A.2d 122, 125 (1960)). We will not overturn the trial court's decision unless we find an abuse of discretion. *See id.*

The defendant argues that even if Rule 801(d)(1)(B) does not apply in this case, the trial court erred by admitting the victim's *entire* two-page statement, when only portions of the statement had been attacked on cross-examination. According to the defendant, permitting the State to bolster the victim's credibility by eliciting uncontested details of the robbery subjected him to unfair prejudice.

We find that the trial court properly admitted the entire statement after the defendant had seized upon inconsistencies in portions of the statement to impeach the victim's credibility. Our prior decision in *Dean* is controlling. In *Dean*, the defendant had impeached the prosecutrix's credibility by highlighting discrepancies between her in-court testimony and information in a thirty-three page statement she had given to the police. 129 N.H. at 750, 533 A.2d at 337. On

redirect examination, the State offered the entire statement to rehabilitate the prosecutrix's credibility. The trial court admitted the statement, with an instruction that the jurors could not consider it as substantive evidence. We held that the prosecutrix's entire statement was properly admitted to "show that the statement, as a whole, was consistent with her testimony, and that any inconsistencies were insignificant." *Id.* We found the defendant's claim of prejudice without merit, "especially in light of the trial court's limiting instruction." *Id.*

In the present case, as in *Dean*, the defendant had attempted to impeach the victim's testimony through reference to portions of the victim's prior statement. The thrust of the cross-examination was not simply to suggest that the defendant, his hat, and his knife were not as described by the victim, but to imply that the victim's entire identification testimony was untrustworthy. On review of this statement, as used in this case, the trial court reasonably could have concluded that for the jury to evaluate the significance of inconsistencies in the victim's testimony, it had to consider these inconsistencies in the context of the entire statement. The court's careful limiting instructions protected the defendant against unfair prejudice by ensuring that the jury would not use the statement for any purpose other than to evaluate the credibility of the victim's testimony.

In affirming the trial court's decision, we do not purport to establish a *per se* rule mandating the admission of a witness's entire prior statement after the witness has been impeached through reference to portions of the statement. Rather, questions concerning the rehabilitative use of prior consistent statements, and the portions of those statements allowed to rehabilitate an impeached witness, are matters within the sound discretion of the trial court.

*Affirmed.*

All concurred.