Strafford
No. 96-787

THE STATE OF NEW HAMPSHIRE

v.

DAVID FISCHER

February 3, 1999

*Philip T. McLaughlin*, attorney general (*Mark D. Attorri*, senior assistant attorney general, on the brief and orally), for the State.

*Donald E. Bisson*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

JOHNSON, J. The defendant, David Fischer, was convicted of attempted first degree assault, *see* RSA 629:1 (1996); RSA 631:1 (1996), and witness tampering, *see* RSA 641:5 (1996). On appeal, he argues that the Superior Court (*Mohl*, J.) erred in: (1) admitting a prior consistent statement of the victim to bolster the victim's credibility; (2) issuing a "false exculpatory evidence" instruction to the jury; and (3) refusing to strike an allegedly improper statement made by the State during its closing argument and failing to issue a curative instruction. We affirm.

The following facts were adduced at trial. The defendant and the victim began dating in August 1995 and were living together by the late fall. In February 1996, the victim moved her belongings to a new apartment without the defendant's knowledge in an attempt to terminate their relationship. Over the course of the following month, the defendant attempted numerous times to convince her to continue their relationship.

On March 10, 1996, the defendant approached the victim in the parking lot of her workplace as she arrived for work. She testified that the defendant blocked her from exiting her car, telling her that

"we need to talk." She testified that the defendant then restrained her in her car, began to choke her, and told her that he was going to kill her. The victim testified that she was eventually able to free herself by kicking the defendant in the face. As she was running through the parking lot, the defendant shouted to her that he would kill her if she notified the police. She ran into her workplace and called the local police department. While at work, she completed a written police statement. The defendant was arrested later that day and was subsequently charged with attempted first degree assault for choking the victim and witness tampering for his threat to kill her if she called the police.

The defendant and the victim, however, continued to communicate during the months following the March 10th incident. She visited the defendant in the Strafford County House of Corrections on multiple occasions, and the defendant sent her a number of letters. She testified that during her visits, the defendant asked her to "change the story so that he didn't look as guilty." In a letter dated May 30, 1996, the defendant wrote to her that "I . . . went over your statements. They are very damaging. I hope that you will be able to lessen . . . their impact with your personal appearance in court." In a subsequent letter, the defendant urged her to be careful as to what she said to an assistant county attorney regarding the incident. She testified that on one visit to the house of corrections, the defendant handed her a "script" detailing his planned testimony at trial. He later called her and told her that he wanted her trial testimony to match his planned testimony. Notably, the version of the events in the "script" varied from the victim's original statement to the police in several ways that minimized the defendant's culpability. The scripted version of the March 10th incident stated that the defendant grabbed the victim by the "clavicle," not the neck, and contained no reference to the assertion that the defendant threatened to kill her if she called the police. Shortly before trial, the victim turned the letters and "script" over to the State, and these documents were entered into evidence at trial. The defendant's trial testimony essentially followed the "script" given to the victim. The defendant, however, denied that the "script" was intended to influence her, but rather contended that it was one of many "essays" written in prison that he later shared with her. The defendant was convicted of both charges, and this appeal followed.

## I. Prior Consistent Statement

The defendant contends that the trial court erred in admitting, as a prior consistent statement, the victim's written statement given to police on the day of the assault. We have held:

> While hearsay statements are generally inadmissible, we have long recognized the common law rule that a prior consistent statement is admissible for the nonsubstantive use of rehabilitating a witness's credibility. The admissibility of a prior consistent statement, for use in rehabilitating a witness's credibility, is a matter wholly within the discretion of the trial court.

*State v. Hennessey*, 142 N.H. 149, 159, 697 A.2d 930, 937 (1997) (citations and quotation omitted); *see State v. Morales*, 136 N.H. 616, 619, 620 A.2d 1034, 1036 (1993); *cf.* N.H. R. Ev. 801(d)(1)(B) (under certain circumstances a prior consistent statement may be admitted as substantive evidence). The State argued at trial that admission of the statement was necessary to rehabilitate the credibility of the victim in order to rebut the theory of the defense that she was lying and to respond to a statement by a defense witness on cross-examination that the victim kept "changing everything she says all the time." The court ruled that the statement was admissible "to evaluate what [the victim] said at the time of the encounter" subject to an instruction that the jury may only use the statement to assess her credibility.

■ In order for the common law rule allowing the admission of prior consistent statements to rehabilitate a witness's credibility to apply, however, prior inconsistent statements must have been introduced into evidence by the opposing side. *See State v. Woods*, 130 N.H. 721, 728, 546 A.2d 1073, 1077 (1988); *State v. Koski*, 120 N.H. 112, 115, 411 A.2d 1122, 1124 (1980). Further, even when a witness's credibility has been directly attacked through the use of prior inconsistent statements, "the common law rule allowing admission of rehabilitative testimony should be used with caution." *State v. Huard*, 138 N.H. 256, 261, 638 A.2d 787, 791 (1994).

Here, we must decide whether it was error for the trial court to admit a prior consistent statement to rebut attacks on a witness's credibility that did not involve the use of actual prior inconsistent statements of that witness. We hold that the first basis for admissibility offered by the State — the theory of the defense that the victim was lying about the assault — was not sufficient to justify admission of the police report. In *Woods*, 130 N.H. at 728, 546 A.2d

at 1077, we rejected the use of a victim's prior consistent statement "to rebut the defendant's cross-examination of the [victim] through which he challenged her testimony." *Cf.* 1 J. STRONG, MCCORMICK ON EVIDENCE § 47, at 173 n.1 (4th ed. 1992) (a mere contradiction is usually not sufficient to justify the use of evidence to bolster a witness's credibility).

The second basis on which the State offered the victim's police report was to rebut a statement made by the defendant's sister regarding the victim. Specifically, during cross-examination by the State, the defendant's sister made the following nonresponsive answer:

Q. Now, you had another conversation very recently, that is this week, with [the victim], didn't you?

A. Yes, I did.

Q. And she indicated what her intentions were with regard to this trial, didn't she?

. . . .

A. Yes, she did.

Q. You were aware that [the victim] had, by this time, turned over your brother's letters to the prosecutor's office, correct?

A. Yes.

Q. And you were very angry about that, weren't you?

A. No, I was not.

Q. Did you express anger to [the victim]?

A. I expressed disbelief to her for keeping — changing everything she says all the time, and never being consistent.

The State contends that given the testimony that the victim was never consistent, the trial judge properly admitted the victim's prior statement to police. We disagree. Although a decision to admit prior consistent statements is discretionary, *see, e.g., Morales*, 136 N.H. at 619, 620 A.2d at 1036, we hold that the decision to admit the victim's prior statement constituted an abuse of discretion given the insubstantial nature of the attack. This attack on credibility was comprised of a nonresponsive comment during cross-examination by the State regarding that witness's bias toward the victim. It was

substantially different in nature from those situations where we have allowed the use of prior consistent statements. In those cases, prior consistent statements were allowed to counter repeated attacks by the defendant on inconsistencies in a witness's statements. *See Hennessey,* 142 N.H. at 160, 697 A.2d at 937; *Morales,* 136 N.H. at 620, 620 A.2d at 1036-37.

■ Furthermore, it is not clear whether the defendant's sister's statement about the victim's consistency concerned the details of the incident, or whether the victim would turn the defendant's letters over to the State. Moreover, during its case in chief, the *State* introduced evidence that the victim had lied about the assault, under oath, during an earlier criminal proceeding. It is also unclear, therefore, whether the "inconsistency" comment referenced the victim's earlier willingness to testify favorably for the defendant. In light of our directive that the common law rule regarding prior consistent statements should be used with caution, *see Huard,* 138 N.H. at 261, 638 A.2d at 791, we hold that the trial court abused its discretion in admitting this prior statement.

The State contended at oral argument that the trial court did not err because we have, in the past, allowed a witness to be rehabilitated through the use of a prior consistent statement without first being impeached specifically by a prior inconsistent statement. In *Twardosky v. Company,* 95 N.H. 279, 284, 62 A.2d 723, 727 (1948), we held that it was proper to admit a prior consistent statement to rebut an "inference" generated by cross-examination that the witness had changed his testimony. In that case, however, we held that the prior consistent statement was properly admitted to show that the witness in fact had not made *any* prior inconsistent statements. *Id.; cf. State v. Thibedau,* 142 N.H. 325, 330, 702 A.2d 299, 301 (1997) (prior consistent statement proper to demonstrate, contrary to defendant's implication, that victim had not altered testimony). Unlike the instant case, the evidence introduced in *Twardosky* was an appropriate, narrowly tailored, and logically relevant response to a specific attack on the witness's credibility. *See Twardosky,* 95 N.H. at 284, 62 A.2d at 727; 1 STRONG, *supra* § 47 at 177 (the response must "meet the assault").

The State contends, however, that any error committed by admitting the victim's prior consistent statement was harmless. We agree. It is well-settled that

[t]he State bears the burden of proving that an error is harmless, a burden satisfied by proof beyond a reasonable doubt that the erroneously admitted evidence did not affect

the verdict. In deciding whether the State has met its burden, we consider the strength of the alternative evidence presented at trial. We also consider the character of the inadmissible evidence, including whether the evidence was cumulative or inconsequential in relation to the State's evidence.

*Thibedau*, 142 N.H. at 329, 702 A.2d at 301 (citations omitted). Here, the information in the victim's statement was merely cumulative because it was substantially the same as testimony elicited from other witnesses during the State's case-in-chief. Specifically, the State introduced the testimony of the victim's co-worker, who testified that the victim claimed she had been choked during the attack in the parking lot, and the physician who examined her shortly after the attack, who testified that the victim asserted she had been attacked and exhibited physical injuries consistent with being choked. *See State v. Ballentine*, 116 N.H. 120, 121, 352 A.2d 403, 404 (1976). Thus, the jury had already heard testimony bolstering the victim's version of the attack. *Cf. State v. Taylor*, 141 N.H. 89, 92-93, 677 A.2d 1093, 1095-96 (1996) (any error in admitting details of pardon application was harmless where evidence was cumulative and less damaging than other evidence presented).

   The defendant, relying on *State v. McSheehan*, 137 N.H. 180, 185, 624 A.2d 560, 563 (1993), claims that introduction of the victim's written statement was not harmless error because it amounted to a written outline of the State's case. We find this argument unpersuasive. In *McSheehan*, the written document in dispute was a detailed seventy-nine page excerpt from a ninety-one page deposition. *Id.* at 182, 624 A.2d at 561. Here, the victim's written statement covered barely one page. Further, the jury was in possession of arguably more damaging written evidence in the form of the defendant's letters from the house of corrections urging the victim to minimize his guilt. Accordingly, we are satisfied that introduction of the victim's prior consistent statement did not affect the verdict and therefore hold that it was harmless beyond a reasonable doubt.

Finally, the defendant takes issue with jury instructions regarding the appropriate evidentiary use of the police report. We have stated that "[t]he distinction between rehabilitation of a witness's credibility as to particular testimony and the truth of the testimony itself is difficult and requires a careful explanation in the limiting instruction." *Huard*, 138 N.H. at 261, 638 A.2d at 791; *see State v. Martin*, 138 N.H. 508, 514-15, 643 A.2d 946, 950 (1994). The

defendant argues that the court's instruction did not carefully explain that the jury may use the police report only to rehabilitate the witness's credibility. The instruction presented to the jury, however, was prepared by defense counsel. Because the defendant failed to object to the instruction at trial, we hold that the defendant's claim of error is waived. *See State v. Seymour*, 142 N.H. 620, 626, 707 A.2d 130, 134 (1998).

## II. *"False Exculpatory Evidence" Instruction*

The defendant next argues that the trial court erred in issuing a "false exculpatory evidence" instruction regarding the "script" the defendant gave to the victim. Near the conclusion of trial, the State asked the court to instruct the jury that if it finds that the defendant wrote the "script" in an effort to fabricate evidence or influence the victim, then the jury may consider the script as evidence of consciousness of guilt. Over the defendant's objection, the court instructed the jury that

> [a]ttempts by a defendant to make up evidence or to influence a witness in connection with a crime charged may be considered by you in light of all the other evidence in the case. You may consider whether this evidence shows a consciousness of guilt and determine the significance to be attached to any such conduct.

On appeal, the defendant argues that it was inappropriate for the court to give the instruction under the facts of this case, and that the judge's instruction amounted to an improper comment on the evidence.

As a preliminary matter, we will not decide whether the instruction amounted to an impermissible comment on evidence because the defendant never specifically objected on this basis during trial. "A specific, contemporaneous objection to the trial court's refusal to give a particular jury instruction is necessary to preserve the issue for appellate review." *Seymour*, 142 N.H. at 624, 707 A.2d at 133. "The purpose of our preservation requirement is to ensure that the trial court is made aware of the substance of the objection and thus given an opportunity to correct the error." *State v. Cole*, 142 N.H. 519, 521, 703 A.2d 658, 659 (1997). Consequently, our preservation requirement "is particularly appropriate where an alleged error involves a jury instruction." *Seymour*, 142 N.H. at 624, 707 A.2d at 133 (quotation omitted). Accordingly, we will only address the issue of whether, under the facts of this case, it was improper to issue a "false exculpatory evidence" instruction.

Rather than arguing that "false exculpatory evidence" instructions are *per se* improper under New Hampshire law, the defendant contends that even if they are proper, it was erroneous to give the instruction under the standards established for such instructions in other jurisdictions. Accordingly, we express no opinion on the standards and circumstances under which such instructions may be given.

Because we have not had the occasion to address the propriety of a "false exculpatory evidence" instruction, we will briefly summarize how some courts have described the instruction's content and use. A "false exculpatory evidence" instruction advises the jury that, if a defendant has intentionally made a statement tending to demonstrate his or her innocence, and that this statement is later discovered to be false, then the jury may properly consider whether this constitutes circumstantial evidence of a consciousness of guilt. *See United States v. Perkins*, 937 F.2d 1397, 1401 n.2 (9th Cir. 1991). A mere denial by the defendant that he or she committed the crime, however, does not justify the use of a "false exculpatory evidence" instruction. *See United States v. Bear Killer*, 534 F.2d 1253, 1260 (8th Cir.), *cert. denied*, 429 U.S. 846 (1976). The instruction "merely informs the jury that it may infer consciousness of guilt from an exculpatory statement if, in the light of other evidence produced at trial, the jury determines that the defendant knew the statement was false when it was made." *United States v. Durham*, 139 F.3d 1325, 1331-32 (10th Cir.) (emphasis omitted), *cert. denied*, 119 S. Ct. 158 (1998). It is improper for a court to instruct the jury that this constitutes evidence of guilt. Rather, it may only be used as evidence of consciousness of guilt, the significance of which is left to the jury. *See Perkins*, 937 F.2d at 1402; *United States v. Nusraty*, 867 F.2d 759, 765 (2d Cir. 1989).

The First Circuit has held that a "false exculpatory evidence" instruction may be appropriate only in a limited set of circumstances, such as where the false exculpatory statement involves a matter collateral to the facts establishing guilt, is undeniably implausible on its face, or involves a defendant charged with a specific intent crime who admitted certain conduct but claimed not to know it was illegal. *United States v. Littlefield*, 840 F.2d 143, 149-50 (1st Cir.), *cert. denied*, 488 U.S. 860 (1988); *see also United States v. Eley*, 723 F.2d 1522, 1525 (11th Cir. 1984). Some courts, including the First Circuit, have found the instruction inappropriate where "the jury could find the exculpatory statement at issue to be false only if it already believed evidence directly establishing the defendant's guilt." *Littlefield*, 840 F.2d at 149; *see Durham*, 139 F.3d

at 1332 (error because of logical circularity problem). Other courts apply a broader rule and have held that the instruction is appropriate where exculpatory statements beyond a mere denial are proven false, *see Bear Killer*, 534 F.2d at 1260 (exculpatory statements asserted an alibi defense); *United States v. Cogdell*, 844 F.2d 179, 181 (4th Cir. 1988) (defendant accused of cashing income tax refund check and replacement check accused store manager of allowing another customer to cash her original refund check), *abrogated on other grounds by Brogan v. United States*, 522 U.S. 398 (1998), or where "any other exculpatory statement . . . is contradicted by evidence," *United States v. McDougald*, 650 F.2d 532, 533 (4th Cir. 1981) (defendant's denial that he forged endorsement contradicted by handwriting expert).

On appeal, the defendant asks us to adopt the rule set forth in *Littlefield*, 840 F.2d at 149, that it is inappropriate to issue a "false exculpatory evidence" instruction where the jury can find the exculpatory statement to be false only after making the necessary finding that the defendant is guilty of the charged offense. The defendant argues that the trial court erred because the jury could conclude that the defendant's statement was false only if it believed other evidence establishing his guilt; namely, the victim's account of the assault.

■ Assuming without deciding that the rule set forth in *Littlefield* applies, we hold that even under that case, the proffered instruction was appropriate. The defendant's claim that the "script" that he turned over to the victim was one of many "essays" written in prison that he shared with the victim is so undeniably implausible on its face that even if *Littlefield* were to be adopted, the trial court's charge would be proper. *See id.*

### III. Closing Argument

Finally, the defendant contends that the trial court erred when it overruled the defendant's objection and did not give a curative instruction regarding comments made by the State during its closing argument. Specifically, the State made the following argument:

> Reasonable doubt is a constitutional provision. That is you have to be — you have to be pretty darn sure that someone's guilty. Don't be scared of him. Don't be scared of saying guilty if your intellect tells you that he's guilty. It is a word that is spoken in criminal courtrooms across this country every day . . . .

The defendant objected, stating: "[W]hy is [the prosecutor] referring to some other cases by saying it's a — he can't say it's a word that's spoken every day of the week. He can't say anything about any other case. We're here on this case, and this case alone." The defendant did not move for mistrial or request a curative instruction. After the court overruled the objection, the State continued: "Guilty is a word that is spoken in criminal courtrooms across this country every day. Don't be scared."

On appeal the defendant argues that the trial court erred in overruling his objection because the prosecutor's comments: (1) argued facts not in evidence; (2) improperly appealed to the sympathies of the jury; and (3) were irrelevant.

Assuming without deciding that the prosecutor's statement is improper as the defendant argues, we turn to the issue of whether this conduct constituted prosecutorial misconduct requiring a new trial. *See State v. Boetti,* 142 N.H. 255, 261, 699 A.2d 585, 589 (1997); *State v. Bujnowski,* 130 N.H. 1, 4, 532 A.2d 1385, 1386 (1987). When viewed in the context of the State's entire closing statement, *see State v. Haines,* 142 N.H. 692, 701, 709 A.2d 762, 767 (1998); *cf. Bujnowski,* 130 N.H. at 5-6, 532 A.2d at 1387-88, we hold that this comment did not so seriously prejudice the defendant's case as to warrant a new trial. Although the prosecutor stated that other juries have found other defendants guilty, he reminded this jury that a finding of guilty in this case was appropriate only "if your intellect tells you that he's guilty." Further, the prosecutor simply urged the jurors not to be afraid to apply the law if they found, beyond a reasonable doubt, that the defendant was guilty of the charged acts. *Cf.* N.H. CRIMINAL JURY INSTRUCTIONS 1.01 (1985) (a jury "should decide the facts in this case . . . without fear").

Finally, the defendant argues that the prosecutor's comments impermissibly appealed to the sympathies of the jurors. *Cf. State v. Preston,* 121 N.H. 147, 151, 427 A.2d 32, 34 (1981). Again, the prosecutor simply urged a vote for conviction *if the jurors had already decided* that the defendant was guilty, and as such, we find that the comments did not impermissibly appeal to the jurors' sympathies. Accordingly, we are satisfied that comments made by the prosecutor in this case, who was not counsel on appeal, do not mandate that the defendant's convictions be reversed.

*Affirmed.*

All concurred.