Hillsborough-northern judicial district
No. 2008-219

### The State of New Hampshire

v.

### Delvin White

Argued: June 11, 2009
Opinion Issued: July 9, 2009

*Kelley A. Ayotte*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*David M. Rothstein*, deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.

DUGGAN, J. Following a jury trial in the Superior Court (*Abramson*, J.), the defendant, Delvin White, was convicted of one count of aggravated felonious sexual assault and one count of felonious sexual assault. *See* RSA 632-A:2, I(l) (Supp. 2008); RSA 632-A:3, III (Supp. 2008). The defendant appeals, arguing that the trial court erroneously admitted the victim's prior consistent statement to rehabilitate her credibility. We affirm.

The jury could have found the following facts. In March 1996, the defendant visited the home of a friend, Wayne Guyer, and his wife, Marguerite. The Guyers' four children were also in the apartment. Throughout the course of the day, the defendant and Wayne played cribbage and consumed several beers. After dinner, the Guyers convinced the defendant to spend the night so that he would not drive home intoxicated. Later that night, Wayne and Marguerite watched television in the living room, while the defendant watched television in the playroom with two of the children, M.G., age eight, and D.G., age fifteen.

The defendant sat between the two children. M.G. testified that the defendant put his arm around her, put his hand under her shirt and touched her breast. He then put his hand down M.G.'s pants, touched her genital area and penetrated her vagina with his finger.

M.G. told the defendant that she had to speak with her father, and went into the living room. After she told Wayne and Marguerite what had happened, Wayne ran into the playroom to confront the defendant, calling him a "son of a bitch." Before Wayne said anything else, the defendant replied, "I didn't touch your f—ing kid." Wayne then hit the defendant. Marguerite called 9-1-1, and soon thereafter Officer James Curran arrived. After speaking with the adults, Officer Curran spoke with M.G. for ten to

fifteen minutes. The defendant was arrested and Marguerite took M.G. to Elliot Hospital, where Dr. Richard King examined her.

Dr. King testified that there were no physical signs of sexual assault, but that their absence did not surprise him in light of M.G.'s description at the hospital of the assault. He testified that she had said the defendant "put his hand into her shirt and put his hand into her pants." When asked whether M.G. said the defendant "touched" or "penetrated" her vagina, Dr. King responded: "I'm sure an eight year old wouldn't say penetrated." The next day, Detective Kevin Kelley, a juvenile investigator, conducted an in-depth interview of M.G.

At trial, the defendant cross-examined M.G. concerning her reporting of the incident. The defense first asked M.G. if it was her testimony that the defendant put his finger inside her, to which she responded that he did. The examination continued:

Q: Do you remember what you said to your dad was that Delvin put his hand on your genital area, not in. Do you remember that?

A: Yes.

Q: And later that night when the policeman came and the policeman talked to you that night, right?

A: Yes.

Q: And you talked to other policemen later, right?

A: Yes.

Q: But that night you talked to at least one policeman?

A: Yes.

Q: And you told that policeman that Delvin put his hand on your genital area. Right?

A: Yes

. . . .

Q: Also when you talked to the doctor, or went to the hospital, you told somebody that Del had kissed you. Do you remember that?

A: No, I cannot remember that.

Q: Okay. But you certainly didn't tell your dad that, did you?

A: No, I didn't.

Q: And you didn't tell the policeman that, right?

A: I don't believe so.

To rehabilitate M.G.'s credibility, the State later called Detective Kelley as a rebuttal witness. Detective Kelley testified that officers responding to the scene of an alleged sexual assault do not generally conduct detailed

interviews of victims, but rather make an initial report and refer the matter to a trained juvenile investigator. Detective Kelley stated that he had the opportunity to conduct an in-depth, follow-up interview with M.G. the day after the incident. The prosecutor then asked: "Did she at some point tell you whether or not she had been digitally penetrated by Delvin White?" Detective Kelley responded, "Yes, she did." Nothing further was said concerning her statements during the interview. Following a two-day trial, a jury found the defendant guilty of both charges.

On appeal, the defendant argues that the trial court erred in admitting M.G.'s prior consistent statement through Detective Kelley to rehabilitate her credibility. The admissibility of prior consistent statements for rehabilitative purposes is a matter wholly within the discretion of the trial court, and will not be overturned absent an unsustainable exercise of discretion. *State v. Dewitt*, 143 N.H. 24, 27 (1998); *cf. State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard).

Notwithstanding New Hampshire Rule of Evidence 801(d)(1)(B), our common law rule allows the admission of prior consistent statements for the limited purpose of rehabilitation when a witness's credibility has been impeached by the use of prior inconsistent statements. *Dewitt*, 143 N.H at 27-28; *State v. Morales*, 136 N.H. 616, 619 (1993). The prior consistent statements, however, may not be used substantively, and a defendant is entitled to a limiting instruction to prevent unfair prejudice. *Dewitt*, 143 N.H. at 28. Even when a witness's credibility has been attacked through the use of prior inconsistent statements, however, "the common law rule allowing admission of rehabilitative testimony should be used with caution." *State v. Fischer*, 143 N.H. 311, 314 (1999) (quotation omitted).

The State first argues that Detective Kelley's testimony did not contain a "statement" by M.G., and is therefore not hearsay requiring a prior consistent statement analysis. Specifically, the State argues that the phrasing of the question as "did she at some point tell you whether . . . ," answered solely with a "yes" response, means only that M.G. at some point spoke about penetration, but not that she specifically said that penetration had occurred. Because Detective Kelley did not actually reveal M.G.'s answer, the State argues, he did not testify to an out-of-court statement. While we agree with the State that Detective Kelley did not actually testify to an out-of-court statement, under the circumstances of this case, an overly literal interpretation of Detective Kelley's answer is not warranted in view of the court's limiting instruction and the State's closing argument. The court instructed the jury: "Members of the jury, you've heard testimony regarding [M.G.'s] statement . . . . You may consider the statements solely for the limited purpose of evaluating [M.G.'s] credibility

and not as proof that the facts in the statement[s] are true." Moreover, in its closing statement, the State argued:

> And what does an eight year old know about sexual penetration and how to explain that to a police officer that just came to her apartment after she had just been assaulted and her dad's been in a furious fight? Does an eight year old know how to explain that even to an emergency room doctor? Or does an eight year old know better how to explain that to a seasoned detective like Kevin Kelley who is trained specifically to figure those things out? If those are inconsistencies, they can be explained away and you need to explain them away.

Even though the court's instructions and the State's argument are not evidence, in considering Detective Kelley's testimony in the face of the limiting instruction and the State's closing argument, the only reasonable inference a jury could draw was that Detective Kelley had asked M.G. if there had been penetration and she replied affirmatively.

■ The State next argues that if the testimony did contain an out-of-court statement, it was nonetheless admissible to dispel the inference created on cross-examination that M.G. had not reported penetration until the day of trial. We agree. In this case, the defendant's cross-examination of M.G. concerning her inconsistent statements in her description of the incident to her father, Officer Curran and Dr. King left a clear impression that M.G. had not reported penetration and had only recently changed her story. In light of the defendant's impeachment of the witness, our common law rule of rehabilitation permitted the State to cure the damage by introducing her prior consistent statement through Detective Kelley. Furthermore, the trial court correctly explained the limited permissible use of the testimony in a limiting instruction, thus protecting the defendant from unfair prejudice. *See Dewitt*, 143 N.H at 28; *State v. Martin*, 138 N.H. 508, 514-15 (1994).

■ The defendant argues, however, that this case is distinguishable from our prior cases allowing the introduction of prior consistent statements for rehabilitation. He argues that prior consistent statements are only admissible when they are part of the *same* interview or conversation containing the prior inconsistent statements used to impeach the witness. Although the facts of most rehabilitation cases would satisfy that rule, *see, e.g., Dewitt*, 143 N.H. at 28; *Martin*, 138 N.H. at 514; *Morales*, 136 N.H. at 618, the doctrine only requires that the prior consistent statement be introduced as "an appropriate, narrowly tailored, and logically relevant response to a specific attack on the witness's credibility." *Fischer*, 143 N.H. at 316.

Indeed, in *State v. Huard*, we held that a victim's four prior statements to an officer could be used as prior consistent statements to rehabilitate his credibility if he was impeached with prior inconsistent statements. *State v. Huard*, 138 N.H. 256, 260-61 (1994). The defendant is correct, however, in arguing that there are limits upon the doctrine, and that certain factors such as the passage of time or intervening events could make a prior consistent statement less probative as to credibility and more prejudicial to the defendant. It is for this reason that the rule "should be used with caution." *Fischer*, 143 N.H. at 314 (quotation omitted). This, however, is not such a case.

Here, the prior consistent statement was made the day after the incident. There was no testimony that M.G. had denied penetration when speaking with adults the night of the incident; rather, she simply reported that the defendant had placed his hand "on" her private area. It was not until she spoke with an officer trained to interview child victims of sexual assault that she specifically mentioned penetration. As Dr. King testified, "I'm sure an eight year old wouldn't say penetrated." Detective Kelley's testimony that he discussed penetration with M.G., therefore, was "an appropriate, narrowly tailored, and logically relevant response" to the defendant's inference that she had not previously reported the penetration. *Id.* at 316. In light of the trial court's careful review of the matter on the record, as well as its limiting instruction, we cannot say that it unsustainably exercised its discretion in admitting the prior consistent statement for the sole purpose of rehabilitating M.G.'s credibility.

*Affirmed.*

BRODERICK, C.J., and DALIANIS and HICKS, JJ., concurred.